*In re* MARRIAGE OF MARGARET ROSE THURMOND, Petitioner-Appellee, and JOHN WILLIAM THURMOND, Respondent-Appellant.

Second District   No. 2—98—0867

Opinion filed August 11, 1999.

David F. Monteleone and George P. Hampilos, both of Schirger, Monteleone, Hampilos & Getz, of Rockford, for appellant.

Stephen E. Balogh, Carol N. Bailey, and Brendan A. Maher, all of Williams & McCarthy, of Rockford, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Respondent, John William Thurmond, appeals from an order of the circuit court of Winnebago County requiring him to pay (1) $136 per week in support for his 20-year old son, Alexander C. Thurmond (Alex); and (2) 70% of Alex's college tuition and fees. For the reasons that follow, we reverse and remand with directions.

## FACTS

Petitioner, Margaret Rose Thurmond, and respondent were mar-

ried on August 20, 1971. Three children were born of the marriage, namely, John Jr., Vanessa, and Alex. On March 25, 1994, the circuit court of Winnebago County entered a judgment of dissolution of marriage. At that time, Alex was the parties' only minor child. Under the terms of the judgment, petitioner was awarded custody of Alex, and respondent was ordered to pay petitioner $150 per week in maintenance and $136 per week in child support.

On February 27, 1996, respondent filed a *pro se* motion to terminate maintenance and child support payments. Subsequently, respondent retained counsel. On January 13, 1997, respondent filed a petition to vacate child support and to terminate maintenance. The petition noted that Alex turned 18 years old on April 6, 1995, and that he graduated from high school on June 1, 1996. The petition prayed for a termination of maintenance on the ground that petitioner failed to make a good-faith effort to rehabilitate herself.

On April 3, 1997, petitioner filed a petition for post-high school support. The petition requested financial support from respondent for Alex's postsecondary education. The petition alleged that Alex suffers from "educational and learning disabilities." The petition also alleged that petitioner did not have sufficient funds to enroll Alex in an institution of higher education and requested financial assistance from respondent to assist Alex in his postsecondary educational endeavors.

A hearing on the parties' motions was held on April 7, 1997. At the hearing, petitioner testified that Alex is a "slow learner" with an IQ of 89, which she described as "bordering on below average." Petitioner admitted that Alex was not eligible for Social Security disability benefits because neither the State of Illinois nor the State of Wisconsin would declare Alex disabled. Petitioner testified that her income ranged from $7,000 in 1994 to $11,000 in 1996.

According to petitioner, she and Alex had researched schools that have learning assistance programs for their students. They located one school in Colorado and one school in Utah. Petitioner also noted that Alex's composite score on the ACT college entrance examination was 16. Petitioner admitted that Alex finished high school in four years and that during his last year of high school, with the exception of one grade of "C," Alex received all "A"s and "B"s. Petitioner testified that at the time of the hearing Alex was enrolled in a technical college, where he was taking classes in sign language and computers.

Respondent testified that his take-home pay after child support and maintenance is withheld is $391.92 per week. Respondent also stated that he would not have "any problem contributing toward [his] son's education" but that he would like to be informed as to where Alex is enrolled and the classes that Alex is taking. Respondent also

testified that he has no health insurance through his employer, no retirement funds, and no savings.

On February 6, 1998, the trial court entered an order (1) requiring respondent to continue paying child support for Alex in the amount of $136 per week; (2) directing respondent to pay 70% ($2,975) of Alex's college tuition and fees for the 1997-98 school year at the rate of $99 per week and 70% of Alex's college tuition and fees for the 1998-99 academic year; (3) reserving the issue of maintenance; and (4) ordering respondent to pay past-due child support subject to a credit for the overpayment of maintenance. The order also required Alex to apply any earnings from his employment towards his personal living and college expenses and to provide respondent with information about his progress at college.

On March 3, 1998, respondent filed a motion for clarification and for reconsideration of the February 6, 1998, order. The motion sought clarification as to the findings made by the court regarding (1) respondent's and petitioner's ability to assist Alex in paying his college tuition and fees; (2) Alex's ability to pay his college tuition and fees; (3) respondent's obligation to continue paying child support; and (4) the fact that, pursuant to a separate order, respondent was required to pay $200 a month for Vanessa's past college tuition and fees. The motion sought reconsideration on the grounds that there was no basis to support the continuation of child support payments for Alex. In addition, respondent challenged that portion of the order requiring him to pay 70% of Alex's college tuition and fees for the 1997-98 and 1998-99 academic years.

On June 9, 1998, the trial court entered an order denying respondent's motion for reconsideration. In addition, the court pointed out that despite a court order of April 7, 1997, requesting respondent to produce financial information, respondent produced only "limited information" in chambers, along with two of his pay stubs. It was this information that the court considered in ruling upon Alex's educational expenses. The court also noted that it considered respondent's monthly income and the parties' relative ability to contribute to Alex's educational expenses. The court observed that it relied upon the testimony of petitioner as to Alex's impairment and that petitioner's testimony was uncontradicted. Finally, the court stated that it would reconsider that portion of its order requiring respondent to contribute 70% of Alex's educational expenses for the 1998-99 academic year if respondent timely submitted to the court for its review his tax returns and W-2 forms for the years 1994 through 1997.

Respondent appeals from the trial court's February 6, 1998, and June 9, 1998, orders, contending (1) he is not obligated to pay nonmi-

nor support for Alex because Alex is not disabled pursuant to section 513(a)(1) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/513(a)(1) (West 1996)); and (2) the trial court abused its discretion in ordering him to contribute 70% of Alex's educational expenses pursuant to section 513(a)(2) of the Act (750 ILCS 5/513(a)(2) (West 1996)).

## ANALYSIS

### I

The first issue for our review is whether the trial court erred in determining that respondent was responsible for nonminor support for Alex on the ground that Alex was disabled pursuant to section 513(a)(1) of the Act.

■ Initially, we reject respondent's contention that this issue is one of statutory construction and requires us to conduct a *de novo* review. A trial court has broad discretion in determining the necessity for and the amount of child support, and its decision will not be set aside unless the trial court abused its discretion or its order is contrary to the manifest weight of the evidence. *In re Marriage of Winters*, 160 Ill. App. 3d 277, 285 (1987). We note that in *In re Marriage of Kennedy*, 170 Ill. App. 3d 726, 732 (1988), the reviewing court applied an abuse of discretion standard of review in determining whether the nonminor child was disabled under section 513 of the Act.

■ Generally, child support terminates when a child reaches the age of 18. *In re Marriage of Ferraro*, 211 Ill. App. 3d 797, 799 (1991). However, pursuant to section 513(a)(1) of the Act:

"The court may award sums of money out of the property and income of either or both parties or the estate of a deceased parent, as equity may require, for the support of the child or children of the parties who have attained majority ***:

(1) When the child is mentally or physically disabled and not otherwise emancipated ***." 750 ILCS 5/513(a)(1) (West 1996).

Respondent notes that section 513(a)(1) of the Act does not define the term "mentally or physically disabled." In the absence of a statutory definition, courts will assume that statutory words have their ordinary and popularly understood meanings. *People v. Anderson*, 148 Ill. 2d 15, 28 (1992). Webster's Third New International Dictionary defines "disabled" as "incapacitated by or as if by illness, injury, or wounds." Webster's Third New International Dictionary 642 (1986).

■ In this case, the trial court concluded that Alex was mentally disabled within the meaning of section 513(a)(1) of the Act. We hold that the trial court abused its discretion in so finding.

Alex graduated from high school in four years. During his last year of high school he received relatively high grades, scoring all "A"s or "B"s and one "C." Alex took the ACT, receiving a composite score of 16. According to the ACT report, 19% of high school juniors and seniors who took the ACT scored at or below Alex's score. Alex was also accepted at junior colleges in Colorado and Utah. Further, Alex was able to obtain employment to earn money to assist in his postsecondary education. The only evidence of Alex's alleged disability was petitioner's statement that Alex was a "slow learner" with an IQ "bordering on below average." In fact, when respondent's counsel questioned petitioner about the nature of Alex's disability, she admitted that Alex had a "significant learning disability but not on paper" and that his alleged disability was not severe enough to qualify Alex for Social Security benefits.

This is not a case like *In re Marriage of Kennedy*, 170 Ill. App. 3d 726 (1988). In *Kennedy*, the appellate court reversed the trial court's determination that the child was not disabled pursuant to a previous version of section 513 of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 513). However, the *Kennedy* court was presented with evidence that the child was enrolled at a school for emotionally disturbed, behaviorally disordered, and learning disabled children after failing as a student at a public high school. Further, the clinical director of the school testified that the child suffered from a severe learning disability and had a behavioral disorder. The director also noted that the child read and spelled at a third-grade level, had a need to act out his anxieties, had a short attention span, had low verbal comprehension, and had some visual motor problems.

Relying on *In re Marriage of Winters*, 160 Ill. App. 3d 277 (1987), petitioner urges us to find that respondent's failure to object to her testimony as to Alex's disability resulted in waiver of this issue. We find *Winters* to be distinguishable from the case *sub judice*. In *Winters*, the reviewing court affirmed the trial court's finding that the parties' minor daughter was disabled on the basis that the husband not only failed to object at trial regarding the wife's testimony that their child was disabled but also failed to make a substantive challenge on appeal as to the child's condition. In this case, respondent has made a substantive challenge to Alex's condition on appeal. We also note that, unlike the petition involved in *Winters*, petitioner's petition for post-high school support, while mentioning Alex's disability, does not request the continuation of child support on the basis that Alex is disabled. Further, we have already determined that petitioner's scant testimony that Alex was a "slow learner" with an IQ "bordering on below average" is insufficient to support a finding that Alex was disabled. Therefore, we reject petitioner's reliance on *Winters*.

Because we determine that the trial court abused its discretion in awarding petitioner nonminor child support on the basis that Alex was disabled under section 513(a)(1) of the Act, we need not address respondent's contention that the trial court failed to consider the statutory factors for setting nonminor support.

## II

■ Next, we address whether the trial court erred in requiring respondent to contribute 70% of Alex's college tuition and costs. A trial court's decision to award educational expenses will not be reversed absent an abuse of discretion. *In re Marriage of Hillebrand*, 258 Ill. App. 3d 835, 840-41 (1994). While the court is authorized to order the payment of a child's college expenses, it is not required to do so. *In re Marriage of Pearson*, 236 Ill. App. 3d 337, 351 (1992). Section 513(b) of the Act provides that, in awarding educational expenses, the court shall consider all relevant factors, including the financial resources of both parents, the standard of living the child would have enjoyed had the marriage not been dissolved, and the financial resources of the child. 750 ILCS 5/513(b) (West 1996). However, a court should not order a party to pay more for educational expenses than he or she can afford. *In re Support of Pearson*, 111 Ill. 2d 545, 552 (1986). Moreover, the trial court must evaluate the party's ability to pay with regard to his resources at the time of the order. *In re Marriage of Fahy*, 208 Ill. App. 3d 677, 698 (1991).

■ Our review of the record indicates that the trial court did consider the factors listed in section 513(b) of the Act. However, based on the record before us, we conclude that the trial court abused its discretion in ordering respondent to pay 70% of Alex's college tuition and fees. Respondent submitted to the court on April 7, 1997, a financial affidavit in which he stated that his net income is $667 per week. Respondent listed $1,945 per month in living expenses and debt payments. Petitioner does not dispute these figures. Moreover, pursuant to the trial court's February 6, 1998, order, respondent was also required to pay $136 per week in nonminor support and $99 per week in educational expenses for Alex. As a result, respondent had insufficient income to meet his monthly obligations. Since the trial court ordered respondent to pay more than he can reasonably afford, we reverse the trial court's award of educational expenses.

On remand, the trial court shall consider the factors listed in section 513(b) of the Act in setting respondent's contribution to Alex's educational expenses. Based on those factors, the court shall set an award that falls within respondent's economic capacity. In assessing respondent's ability to pay, the court may consider the fact that, pur-

suant to a separate order, respondent pays $200 per month for Vanessa's past college tuition and fees. In addition, while the court must confine its award to educational expenses, it may order respondent to contribute to Alex's reasonable living expenses pursuant to section 513(a)(2) of the Act. See *Pearson*, 236 Ill. App. 3d at 351; *In re Marriage of Falat*, 201 Ill. App. 3d 320, 327 (1990).

## CONCLUSION

In sum, we find that Alex is not disabled within the meaning of the Act. Further, we find that the trial court abused its discretion in ordering respondent to contribute 70% of Alex's educational expenses. On remand, the trial court is to reconsider the award of educational expenses in light of respondent's ability to pay.

Reversed and remanded with directions.

RAPP, J., concurs.

JUSTICE THOMAS, dissenting:

While I concur in the majority's holding that it was an abuse of discretion to award petitioner nonminor child support on the basis that Alex was disabled, I respectfully dissent from the majority's determination that the trial court abused its discretion in requiring respondent to pay 70% of Alex's educational expenses.

The determination of education expenses is within the trial court's discretion. *In re Marriage of Zukausky*, 244 Ill. App. 3d 614, 623 (1993). A trial court abuses its discretion only when no reasonable man would take the view adopted by the trial court. *In re Marriage of Puls*, 268 Ill. App. 3d 882, 889 (1994). In determining the amount of an award for college education expenses, a trial court is to consider the financial resources of both parents, the standard of living the child would have enjoyed had the marriage not been dissolved, and the financial resources of the child. 750 ILCS 5/513(b) (West 1996). As the majority opinion notes, it is clear that the trial court did consider all of the foregoing factors in entering its judgment. Because the trial court properly considered these factors, I believe that the trial court acted within its discretion.

In concluding that the trial court did not abuse its discretion, I find it significant that any problems in determining respondent's financial resources were the result of respondent's continued failure to comply with the trial court's order that he produce his 1994, 1995, and 1996 income tax returns, his 1996 W-2 forms, and his most recent paycheck stub. The trial court stated that, in rendering its decision, it

took the financial ability of both parties into account to the extent it had been furnished with information concerning their financial abilities. The court also stated that it looked at respondent's net monthly income and considered information as to some additional, albeit minimal, income that respondent received for side jobs.

While it is true that a court should not order a party to pay more for educational expenses than he or she can afford (*In re Support of Pearson*, 111 Ill. 2d 545, 552 (1986)), I find no evidence in the record that the trial court's order would have such an effect. Respondent's April 7, 1997, financial affidavit shows a weekly gross income of $942.31, with total deductions of $550.39, leaving take-home pay of $391.92. Included within the total deductions, however, was $150 in maintenance for petitioner, which the trial court discontinued, and $136 in child support for Alex. Using respondent's financial affidavit, and even including the child support for Alex that we find was improperly awarded, respondent's monthly shortfall is less than $200. Given the fact that some of respondent's monthly expenses included payments toward credit card debt, which can be reduced, the fact that respondent does receive additional income from side jobs, and the fact that respondent receives rent deductions for work done to the home he rents, I disagree with the majority's conclusion that no reasonable man would take the view adopted by the trial court. Consequently, I would affirm the trial court's order that respondent pay 70% of Alex's college expenses.