*In re* MARRIAGE OF SUSAN D. DEVICK, Petitioner-Appellant, and STEVEN D. DEVICK, Respondent (Platinum Technology, Inc., Third-Party Respondent-Appellee; Law Offices of William J. Stogsdill, Jr., P.C., Petitioner-Appellee).

Second District    No. 2—02—0061

Opinion filed November 14, 2002.—Rehearing denied January 13, 2003.

Dennis C. Waldon, of Lavin & Waldon, P.C., of Chicago, for appellant.

Nancy Scheurwater Hunter and Erin S. Shaw, both of Latham & Watkins, of Chicago, for appellees Steven D. Devick and Platinum Technology, Inc.

No brief filed for appellee Law Offices of William J. Stogsdill, Jr., P.C.

JUSTICE KAPALA delivered the opinion of the court:

Petitioner Susan Devick (petitioner) appeals from two orders of the circuit court of Du Page County, entered pursuant to section 508(c) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/508(c) (West 2000)), which denied her petition for attorney fees against third-party respondent, Platinum Technology, Inc. (Platinum), and which granted the petition for attorney fees filed against her by her former attorney, petitioner William Stogsdill, Jr., P.C. (Stogsdill), in the amount of $13,743.86. For the following reasons, we dismiss petitioner's appeal as to the denial of her petition for attorney fees against Platinum, and we reverse and remand in part and affirm in part the order granting Stogsdill attorney fees.

## FACTS

This appeal stems from matters that arose out of a dissolution of marriage proceeding between petitioner and respondent, Steven Devick. It is necessary to a proper understanding of the issues in this appeal to set forth a brief history of this litigation.

On July 29, 1993, petitioner filed a petition for the dissolution of her marriage to respondent. During the marriage, petitioner and

respondent acquired shares of Platinum stock in joint tenancy. Early in April 1996, respondent, as a director of Platinum, signed an affiliate agreement that effectively restricted the transfer of the Platinum stock until the next financial statement was issued. This was apparently required pursuant to a purchase of two other companies by Platinum. Petitioner was not aware of the affiliate agreement or the concomitant restriction on the transfer of the stock.

On April 16, 1996, the trial court entered a judgment of dissolution of marriage. On that same date, petitioner and respondent signed a marital settlement agreement, which awarded petitioner 127,616 shares of Platinum stock. Pursuant to the marital settlement agreement, respondent was required to effect the transfer of the stock to petitioner, which he did, through Merrill Lynch, the broker with regard to the shares. When petitioner received the shares on June 4, 1996, they contained the restriction that prohibited their transfer.

Petitioner then filed, under the case number of the dissolution proceeding, a petition to enforce the judgment of dissolution against respondent, seeking to obtain unrestricted shares. She later joined Platinum as a third-party respondent. Respondent filed a motion for summary judgment, contending that he had no control over Platinum's refusal to provide the unrestricted shares. The court granted respondent's motion for summary judgment.

Petitioner filed a motion for summary judgment against Platinum in which she argued, relying on section 8—401 of the Uniform Commercial Code (810 ILCS 5/8—401 (West 1998)), that Platinum had no authority to transfer the shares to her with the restrictions. On May 4, 1999, the trial court granted petitioner's motion for summary judgment. The May 4 order also provided that it "disposed of all pending issues" and "shall be final and appealable." On June 4, 1999, 31 days after the entry of the May 4 order, Platinum filed a motion to reconsider the May 4 order. Also, on June 10, 1999, Platinum filed in this court a motion for leave to file a late notice of appeal. Petitioner subsequently filed a memorandum in this court opposing Platinum's motion to file a late notice of appeal. This court, on June 25, 1999, issued an order denying Platinum's motion for leave to file a late notice of appeal.

Our June 25 order stated that the motion was denied because "the written order in the trial court was not a final appealable order pursuant to Supreme Court Rule 304(a)." Petitioner also moved to dismiss Platinum's motion to reconsider the May 4 order as being untimely. The trial court denied petitioner's motion to dismiss and, on September 17, 1999, denied, on its merits, Platinum's motion to reconsider. Platinum filed a timely notice of appeal, and this court affirmed. See *In re Marriage of Devick*, 315 Ill. App. 3d 908 (2000).

Following her victory on appeal, petitioner filed, again as part of the dissolution proceeding, a petition for attorney fees on October 20, 2000, against Platinum. The petition for attorney fees was filed pursuant to sections 508(a)(2) and (a)(3) of the Act (750 ILCS 5/508(a)(2), (a)(3) (West 2000)). This petition asked for attorney fees in the amount of $152,400.86.

Two days earlier, petitioner's attorney, Stogsdill, filed a petition for attorney fees "pursuant to Section 508 of the Act." The Stogsdill petition sought attorney fees from petitioner in the amount of $79,610. On January 10, 2001, after being given leave to withdraw as required by section 508(c), Stogsdill filed an amended petition, again seeking $79,610.

The court conducted a hearing on the petitioner's petition for attorney fees against Platinum on January 2, 2001. On January 12, 2001, the court denied the petition for attorney fees and also denied petitioner's request to appeal the court's ruling pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). As of January 12, 2001, the Stogsdill fee petition was still pending.

In its petition for attorney fees against petitioner, Stogsdill sought, among other things, reimbursement from petitioner for sanctions it was ordered to pay pursuant to a Rule 137 (155 Ill. 2d R. 137) proceeding brought by Merrill Lynch and for the time Stogsdill spent defending itself against the Rule 137 petition. The Rule 137 proceeding was based on a subpoena *duces tecum* issued to Joseph Ganotti of Merrill Lynch related to petitioner's efforts to obtain the unrestricted shares of Platinum. Ganotti's motion to quash the subpoena was granted, and he was given leave to file a petition for sanctions.

The petition for sanctions named Stogsdill only. Following a hearing, the court granted the motion for sanctions, finding that there was no good faith to issue the subpoena and that Stogsdill acted unreasonably in doing so. The court ordered Stogsdill to pay a sanction of $3,047.50. Petitioner paid Stogsdill $3,000, which she later testified was because she felt bad that Stogsdill was sanctioned. Stogsdill charged petitioner for the cost of the transcript and five hours of attorney time for defending itself against the petition for sanctions. Including interest, Stogsdill eventually billed petitioner $3,295.27 for the sanction, $3,062.50 for the attorney fees for defending itself in the sanction proceeding, and $316.80 in expenses.

On June 5, 2001, the court conducted a hearing on the Stogsdill attorney fee petition. At the start of that hearing, Stogsdill conceded that petitioner had paid $52,200 toward her attorney fees and that there were certain errors in its billing statement. It then adjusted its petition to the amount of $22,933.50.

Also at the hearing, Stogsdill submitted its two fee agreements, one from 1995 and one from 1996. The 1995 agreement called for petitioner to pay .75% interest per month on the outstanding balance, and the 1996 agreement called for 1.50% interest per month on the outstanding balance. The 1996 agreement purported to apply to all postdecree work performed by Stogsdill on petitioner's behalf. Stogsdill also submitted an affidavit showing the various work performed and the applicable fees charged. Additionally, Robert Boyd and William Stogsdill, Jr., testified for Stogsdill, and petitioner testified on her own behalf.

On July 4, 2001, the court issued an opinion letter in which it ruled that the first fee agreement controlled and that the proper late charge was .75%. The court also ruled that the agreement did not provide for compound interest by applying the late fee to both the outstanding balance and the previous late charge.

The court also ruled that petitioner was obligated to pay the sanction and attorney fees incurred by Stogsdill in defending the Rule 137 petition. The court stated, based on the transcript of the hearing on the Rule 137 petition, that petitioner "was intimately involved and fully supported the law firm in the conduct that resulted in the sanctions." The court also noted that the unrebutted testimony at the hearing on the Stogsdill petition for fees showed that petitioner directed Boyd to subpoena someone from Merrill Lynch and that she directed Boyd to contest the petition for sanctions. Finally, the court ordered Stogsdill to recompute the amount of fees due using the late charge rate of .75% and "without adding the amount of the late charge to the balance due for purposes of computing subsequent late charges."

The parties subsequently submitted letters to the court stating their positions on the amount of fees due. Stogsdill's letter of November 16, 2001, included handwritten calculations and asserted an amount due of $16,469.59, which was based on interest due of $12,619.39 and an outstanding balance of $3,843.20. Petitioner sent a letter dated June 11, 2001, which included numerous attached documents but no calculations or statement as to the amount due. Petitioner sent a second letter dated June 21, 2001, that added two more items but which also did not include an assertion as to the amount owed. On November 14, 2001, instead of submitting a proposal as to the amount due as requested by the court, petitioner filed a response to the fee petition in which she asserted that, "due to the overcharges, miscalculations, and numerous other errors, that there should be no fees, costs, or the like due [Stogsdill]." Attached to the response were numerous materials, including the handwritten calculations submitted by Stogsdill.

On November 20, 2001, the court conducted a status hearing regarding the Stogsdill fee petition. The court explained that it intended that, "rather than [it] sit down and do the calculations for the parties to do it because [it] thought it was merely a mathematical problem based on what [it] had said." The court then asked the parties for their proposals "alleging as to what the dollar amount should be and how you arrived at that." The attorney for petitioner responded, "That's what I did," referring to his filing of the response on November 14, 2001. The court responded by indicating that it would do the calculations itself.

On November 25, 2001, the court issued a second opinion letter, which states that the parties have been "unable to agree on the computation" as to the attorney fees. According to the November 25 letter, the court reviewed the submissions of the parties and made "[its] own calculations, calculating interest as simple interest at .75% per month, applying payments first to the unpaid interest and then to the unpaid balance of fees." Based upon these calculations, the letter states that petitioner owed $13,743.86 as of October 31, 2001. The letter also directed Boyd to prepare an order in accordance with the letter.

The court thereafter entered an order on December 17, 2001. Petitioner filed her notice of appeal on January 10, 2002. The notice of appeal identifies two orders appealed from, the January 12, 2001, order denying her petition for attorney fees against Platinum and the December 17, 2001, order granting Stogsdill's petition for attorney fees in the amount of $13,743.86.

## DISCUSSION

### Attorney Fees as to Platinum

Platinum initially contends that we have no jurisdiction to consider petitioner's appeal from the January 12, 2001, order denying her petition for attorney fees. Platinum argues in this regard that the January 12 order contains no Rule 304(a) (155 Ill. 2d R. 304(a)) finding and that, because the December 17, 2001, order did not dispose finally of the litigation and it is likely petitioner will continue to litigate this case in the future, it needed such a finding to make it appealable. We disagree; however, we need not decide the issue of jurisdiction on the basis raised by Platinum, as we find we lack jurisdiction to review the January 12, 2001, order for a different reason.

■ We have an independent duty to consider our jurisdiction before addressing the merits of any issue. *Gibson v. Belvidere National Bank & Trust Co.*, 326 Ill. App. 3d 45, 47-48 (2001). Further, it is well settled that a timely notice of appeal is jurisdictional. *Gibson*, 326 Ill. App. 3d

at 48. Supreme Court Rule 303(a)(1) provides that a notice of appeal must be filed within 30 days of a final judgment. 155 Ill. 2d R. 303(a)(1). A final judgment is one that disposes of the rights of the parties with regard to the entire controversy or a definite or separate part thereof. *Gibson*, 326 Ill. App. 3d at 48, citing *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 502 (1997).

■ In the present case, the January 12, 2001, order disposed of a definite and separate part of the litigation, namely, the fee petition brought by petitioner against Platinum. Thus, the January 12 order was final. That leaves the question of whether it was also appealable.

Ordinarily, the January 12, 2001, order, while final, would not be appealable because the Stogsdill fee petition remained pending. Therefore, a finding under Rule 304(a) would be necessary to make the January 12 order appealable. See 155 Ill. 2d R. 304(a). Absent a Rule 304(a) finding, the January 12 order would not become appealable until there was a final order disposing of all remaining matters, which in this case consisted of the Stogsdill petition. In this case, the order disposing of the Stogsdill fee petition was entered on December 17, 2001. Therefore, ordinarily petitioner would have had 30 days from December 17 to appeal the January 12, 2001, order.

This case, however, is not ordinary. When the January 12, 2001, order was entered, there remained pending the Stogsdill petition. The Stogsdill petition was filed pursuant to section 508 of the Act. Section 508(c)(2) expressly states that a "pending but undetermined Petition for Setting Final Fees and Costs shall not affect appealability of any judgment or other adjudication in the original proceeding." 750 ILCS 5/508(c)(2) (West 2000). A pending hearing on a fee petition brought by an attorney against his client does not affect the finality of the dissolution-of-marriage judgment. *In re Marriage of Kerman*, 253 Ill. App. 3d 492, 495 (1993); see also *Kaufman, Litwin & Fernstein v. Edgar*, 301 Ill. App. 3d 826, 833 (1998) (section 508(c)(2) codified *Kerman*).

■ The January 12, 2001, order was an adjudication in the original proceeding. The fee petition against Platinum was brought as part of the original dissolution proceeding and was captioned as such. Further, counsel for petitioner conceded at oral argument that the fee petition was part of the original proceeding. Consequently, the pending fee petition of Stogsdill, which was also filed under section 508, had no effect on the appealability of the January 12, 2001, order. It was, therefore, final and appealable as of January 12, 2001, and petitioner had 30 days from that date to file her notice of appeal. Because the notice of appeal was not filed until January 10, 2002, well past the 30-day limit, we are without jurisdiction to consider petitioner's challenge to the January 12, 2001, order.

## Attorney Fees as to Stogsdill

Next, we turn to the issue of the appropriateness of the trial court's order requiring petitioner to pay $13,743.86 in attorney fees to Stogsdill. In doing so, we note that Stogsdill has not filed an appellee's brief. Because the issues raised can be decided without the aid of an appellee's brief, we will address the merits. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

■ Generally, a trial court's order regarding attorney fees in post-dissolution proceedings will not be disturbed absent an abuse of discretion. *In re Marriage of Mehring*, 324 Ill. App. 3d 262, 276 (2001). Specifically, section 508(c)(3) of the Act provides that the determination of reasonable attorney fees and costs is "within the sound discretion" of the court. 750 ILCS 5/508(c)(3) (West 2000). Accordingly, we must decide to what extent, if any, the trial court abused its discretion in ordering petitioner to pay attorney fees to Stogsdill.

■ We first address the order as it relates to the Rule 137 petition against Stogsdill. Rule 137 allows for sanctions to be imposed against an attorney or the attorney's client. *People v. One 1984 Pontiac Parisienne Sedan*, 323 Ill. App. 3d 717, 720 (2001). Because Rule 137 is penal, courts should construe it strictly. *One 1984 Pontiac Parisienne*, 323 Ill. App. 3d at 720.

■ In this case, Stogsdill did not seek to obtain a sanction against petitioner. Rather, it attempted to make petitioner pay for the sanction imposed upon it in an earlier proceeding. This it cannot do. Petitioner was not named as a respondent in the Rule 137 proceeding, nor did Stogsdill attempt to have her joined in that proceeding. As such, there have been no determinations of sanctionable conduct on the part of petitioner.

Further, Stogsdill cannot attempt, through the back door, to transfer its Rule 137 sanction to petitioner via a petition for attorney fees. First, there has been no showing within the standard applicable to Rule 137 that petitioner violated Rule 137 or that, if she did, a monetary sanction would be appropriate. Second, a Rule 137 sanction does not equate to an attorney fee. Stogsdill simply cannot seek compensation from petitioner for its actionable conduct by later seeking that sanction from petitioner under the guise of an attorney fee due it. To allow it to do so was an abuse of discretion. We therefore reverse the December 17, 2001, order to the extent it required petitioner to pay Stogsdill an attorney fee equal to the amount of the Rule 137 sanction.

That leaves the matter of petitioner's payment of $3,000 to Stogsdill because, as she explained it, she felt bad it had been sanctioned. We do not believe it is proper to hold petitioner to her "voluntary"

payment of the sanction considering our holding that she is not obligated to pay the sanction imposed against Stogsdill. Thus, we hold that on remand the $3,000 should be credited toward attorney fees that are not related to the Rule 137 sanction.

■ We next consider the propriety of ordering petitioner to pay Stogsdill for the time it spent defending itself. There is simply no identifiable legal or equitable basis to justify Stogsdill's attempt to bill petitioner for the time it spent defending itself against the Rule 137 petition.

In an effort to justify its position, Stogsdill argues that it was at the direction of petitioner that it opposed the Rule 137 petition rather than resolve it short of going to court. This reasoning is faulty for several reasons. First, the Rule 137 petition was brought against Stogsdill, not the petitioner. As such, it was entirely up to Stogsdill as to how to handle the matter. The fact that it may have voluntarily followed the advice of petitioner is no reason to visit the consequences on her via a petition for attorney fees. Second, Stogsdill consists of licensed attorneys who are more knowledgeable than petitioner, a nonlawyer, in defending matters such as Rule 137 petitions. It borders on the incredible that experienced attorneys would take their direction from a client in a matter that did not implicate the client. Third, while clients certainly have a say in how their attorneys handle matters involving the client, they have no authority over the attorneys as to matters unrelated to the client's interests. Although the Rule 137 petition was engendered by a subpoena that arose out of petitioner's efforts to obtain unrestricted shares from Platinum, the Rule 137 petition was directed only at Stogsdill. Accordingly, petitioner had no say in how it was handled and Stogsdill was in no way obligated to seek, let alone follow, her direction. Finally, an award of attorney fees under section 508(c) must be related to work done on behalf of the client in connection with the specific provisions of section 508(a). *In re Marriage of Davis*, 292 Ill. App. 3d 802, 810 (1997); *In re Marriage of Pitulla*, 141 Ill. App. 3d 956, 959 n.1 (1986). Here, as to the Rule 137 petition, while it was arguably connected to section 508(a) in that it arose out of the "defense of any proceeding under [the] Act" (see 750 ILCS 5/508(a)(1) (West 2000)), Stogsdill performed no work on behalf of petitioner. Its efforts in terms of the Rule 137 petition benefitted no one but itself. For all these reasons, we hold the trial court abused its discretion to the extent it required petitioner, as part of the December 17, 2001, order, to reimburse Stogsdill for its time spent defending the Rule 137 petition.

■ That leaves the issue of the remainder of the attorney fees awarded to Stogsdill in the December 17, 2001, order. In that regard,

petitioner contends first that the trial court failed to give her proper credits, committed obvious mathematical errors, and applied improper compounding of interest. The problem with petitioner's contention is that she takes a similar approach to that which she took in the trial court. She makes broad assertions about calculation errors, overbilling, and the failure to credit certain payments. She fails to support these contentions, however, with specific references to any evidence she provided to assist the trial court in identifying these indiscretions. In fact, after repeated requests by the trial court for written substantiation of her position as to the specific amounts owed Stogsdill, petitioner instead submitted a multipage document that contained further argument and an assertion that she owed Stogsdill nothing. It was this failure to provide the trial court with its requested substantiation that, in part, prompted the trial court to make its comment that it would itself do the calculations. While petitioner correctly notes here that Stogsdill had the burden of proving the reasonableness of its attorney fees, petitioner cannot now complain about the trial court's computations when petitioner failed to take the opportunity to properly challenge those calculations. Because petitioner has once again failed to specify exactly the defects in Stogsdill's fee petition, we cannot find the trial court abused its discretion in that regard. See *United States Fidelity & Guaranty Co. v. Old Orchard Plaza Ltd. Partnership*, 333 Ill. App. 3d 727 (2002).

■Lastly, petitioner contends that the trial court failed to consider the impact of Stogsdill's conduct on the reasonableness of the fees being sought. Petitioner's specific complaint in this regard is that Stogsdill did not properly seek a Rule 304(a) finding in the May 4, 1999, order granting petitioner summary judgment against Platinum and such failure resulted in a delay of Platinum's appeal, which further delayed her obtaining the unrestricted shares, resulting in her not being able to pay the attorney fees owed and incurring additional interest on those unpaid fees.

Petitioner has failed to show that the delay in Platinum's filing its appeal contributed to her paying an additional amount of interest. She has not established that, absent the sale of the unrestricted shares, she lacked the ability to pay her outstanding bill for attorney fees. For this reason alone, her argument fails.

Second, petitioner's position is based on an unfounded assumption. Petitioner assumes that, if the May 4 order contained the proper Rule 304(a) language, Platinum would have appealed sooner than it did. This is not a conclusive assumption, however, as Platinum would have had 30 days from May 4 to file a motion to reconsider. If it had filed a motion to reconsider during that 30-day period, it would not

have had to file a notice of appeal until 30 days from the date of the order disposing of the motion to reconsider. See 155 Ill. 2d R. 303(a)(1). As it turned out, Platinum filed its motion to reconsider on June 4, 1999. As such, the most petitioner would have gained in terms of time was one day had the May 4 order included the proper Rule 304(a) finding. It is pure speculation to conclude that a notice of appeal filed one day earlier would have resulted in an appellate disposition any earlier than the one ultimately obtained in this case. Petitioner's contention in this regard is too speculative to afford her any relief.

Third, it is entirely inconsistent for petitioner to argue in this appeal that she suffered financially based on a delay in the filing of Platinum's appeal when she objected to Platinum's motion for leave to file a late notice of appeal. Petitioner's contention is specious at best. For all of these reasons, we reject petitioner's argument in this regard.

## CONCLUSION

For the foregoing reasons, we dismiss, for lack of jurisdiction, petitioner's appeal from the January 12, 2001, order denying her attorney fees against Platinum; we reverse the December 17, 2001, order awarding Stogsdill $13,743.86 in attorney fees to the extent it awarded Stogsdill attorney fees for the Rule 137 sanction and for its time spent defending the Rule 137 petition; we affirm the December 17 order in all other respects; and we remand the cause for the trial court to enter a new order, presumably with the assistance of both parties, awarding Stogsdill attorney fees consistent with this opinion.

Dismissed in part; affirmed in part and reversed in part; cause remanded with instructions.

McLAREN and BYRNE, JJ., concur.