2020 IL App (2d) 190310-U
No. 2-19-0310
Order filed November 12, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF AMY NIXON, n/k/a Amy Koester, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 13-D-279 |
| DOUGLAS NIXON, | ) ) ) | Honorable D. Christopher Lombardo, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Presiding Justice Birkett and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Trial court's order that the parties evenly split college expenses for their child, with a cap of $10,000 per year for each party, was an abuse of discretion as father's living expenses, debt payments, and child support obligation exceeded his monthly net income by $744.21; pursuant to Rule 366(a)(5), father's obligation would be reduced to $2375 for each of the child's four years of college.

¶ 2    On June 18, 2014, the circuit court of Lake County entered a judgment dissolving the marriage of petitioner, Amy Nixon, n/k/a Amy Koester, and respondent, Douglas Nixon. Amy and Douglas had two sons, A.J.N. and N.K.N., who were 14 and 10 years of age respectively when the judgment was entered. The judgment incorporated the parties' marital settlement agreement,

which provided that "[the parties] shall pay for a college, university or vocation education for [their] children, to the best of their respective abilities, pursuant to Section 513 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/513 [(West 2014)])." On October 18, 2018, Amy filed a petition seeking a contribution from Douglas for A.J.N.'s college expenses. Following a hearing on January 8, 2019, the trial court granted the motion, ordering each party to pay a portion, not to exceed $10,000, of those expenses. After unsuccessfully moving for reconsideration of the order, Douglas brought this appeal. We modify the judgment.

¶ 3                                  I. BACKGROUND

¶ 4     The petition for contribution alleged that A.J.N. began attending the University of Missouri in August of 2018. Tuition, housing, dining, and other expenses were approximately $28,000 per year for residents and $44,000 per year for nonresidents. A.J.N. was a nonresident, but he planned to live in Missouri over the summer of 2019 in order to obtain residency for tuition purposes.

¶ 5     According to a bystander report of the January 8, 2019, hearing on the petition, Douglas testified that in 2018, he "netted" $22,000. He also testified that he was paying $7000 annually in child support and that his monthly living expenses were $5000. Exhibits admitted into evidence included: (1) Douglas's financial affidavit dated May 21, 2018; (2) Amy's financial affidavit dated May 26, 2018; (3) a document itemizing Douglas's expenses for golf, dining, and liquor, for 2015 through 2018 (Golf/Dining/Liquor Itemization); (4) a document itemizing deposits of funds from Douglas's girlfriend and other sources (excluding employment income) for 2017 and 2018 (Deposit Itemization); and (5) a document itemizing Douglas's repayment of loans from his girlfriend (Repayment Itemization).

¶ 6     According to Douglas's financial affidavit, he was employed by "Guaranteed Rate" earning a gross income of $4053.65 per month in commissions and bonuses. After deductions for

income taxes, payroll taxes, health insurance, and life insurance securing child support, he was left with a net monthly income of $2337.90. His monthly living expenses were $1334.56, and he owed over $40,000 in credit card debt on which he was making monthly payments of $1091.55. His monthly living expenses and credit card payments exceeded his net income by $88.19. In addition, Douglas was obligated to pay $656 per month in child support when the petition for contribution was filed. Douglas's principal assets were a checking account with a balance of $18,826.28 and a 401K retirement account with a balance of $83,347.07.

¶ 7    The Golf/Dining/Liquor itemization detailed expenditures of $6920 in 2015, $5419.32 in 2016, $5484.61 in 2017, and $1388.43 in 2018. The Deposit Itemization showed deposits of funds from Douglas's girlfriend in the amount of $13,050 and deposits from other sources in the amount of $40,935. The Repayment Itemization showed repayments of $23,900.

¶ 8    According to the bystander's report, Douglas testified that he was a PGA golf professional and he "use[d] golf as a means to keep referral sources and to attract referral sources." However, some of the golf expenses related to golfing with his sons. Alcohol expenses related to gifts for clients.

¶ 9    Amy's financial affidavit showed that she was employed by the Special Education District of Lake County, earning $8250.34 per month. Amy reported that she was receiving $1029 per month in child support. We note, however, that after she executed the affidavit, the trial court reduced child support to $656 per month. Deductions for income taxes, payroll taxes, health insurance, mandatory retirement contributions, and union dues totaled $2228.95. Her monthly living expenses were $7518.61. She owed $980 in credit card debt and was making monthly payments of $59.

¶ 10    Amy's principal assets were bank accounts with a total balance of $32,224.19, investment and retirement plan accounts with a total balance of $260,540, and $70,000 in home equity. She also had a Teacher Retirement System pension worth $137,999.80.

¶ 11    In a written order the trial court found that a college savings plan for A.J.N. paid his expenses for his first year of college. It was anticipated that A.J.N. would obtain student loans of $6500 for his sophomore year and $7500 per year for his junior and senior years. A.J.N. would be required to work each year and contribute $2000 in addition to the loans. The order required Amy and Douglas each to pay 50 percent of the balance of A.J.N.'s college expenses, provided that neither of them would be required to pay more than $10,000.

¶ 12                                II. ANALYSIS

¶ 13    We initially note that, although Amy has not filed a brief, this appeal is amenable to a decision on the merits pursuant to the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 14    Section 513(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/513 (West 2016)) provides, in pertinent part, that "[t]he court may award sums of money out of the property and income of either or both parties or the estate of a deceased parent, as equity may require, for the educational expenses of any child of the parties." Section 513(j) of the Act (750 ILCS 5/513(j) (West 2016)) provides:

> (j) In making awards under this Section, or pursuant to a petition or motion to decrease, modify, or terminate any such award, the court shall consider all relevant factors that appear reasonable and necessary, including:
>
> > "(1) The present and future financial resources of both parties to meet their needs, including, but not limited to, savings for retirement.

> > (2) The standard of living the child would have enjoyed had the marriage not been dissolved.
> >
> > (3) The financial resources of the child.
> >
> > (4) The child's academic performance."

An award of educational expenses is reviewed for an abuse of discretion. *In re Marriage of Wilhelmsen*, 2019 IL App (2d) 180898, ¶ 6.

¶ 15 The record sheds no light on the standard of living A.J.N. would have enjoyed had the marriage not been dissolved or on A.J.N.'s academic performance. However, assuming that the University of Missouri was an appropriate college choice, the contribution award would appear to be commensurate with A.J.N.'s financial resources. Thus, whether the contribution award was appropriate hinges on the parties' financial resources. A parent should not be ordered to pay more for educational expenses than he or she can afford. *In re Marriage of Fahy*, 208 Ill. App. 3d 677, 698 (1991). Moreover, "[a] party's ability to pay must be evaluated with regard to the party's resources at the time of the hearing." *In re Support of Pearson*, 111 Ill. 2d 545, 552 (1986).

¶ 16 Our decision in *In re Marriage of Thurmond*, 306 Ill. App. 3d 828 (1999), is instructive. In that case, the father was ordered to pay $5148 per year ($99 per week) for educational expenses. Adjusted for inflation, that amount is the equivalent of $8,082 per month.[1] His take home pay was

---

[1] We use an adjustment factor of 1.57 based on the relative purchasing power of a dollar in April 1997, when the hearing on the issue of education expenses in *Thurmond* was held, and a dollar in January 2019, when the hearing was held in this case. The United States Bureau of Labor Statistics website maintains a Consumer Price Index inflation calculator

$2779 per month ($667 per week). Adjusted for inflation, that amount is the equivalent of $4363.03 His living expenses and debt payments were $1995 per month. Adjusted for inflation, that amount is equivalent to $3132.15. He paid $589 ($136 per week) per month in nonminor support and $200 per month for another child's past college tuition and fees. Combined, those amounts are equivalent to $1239.73.

¶ 17    Based on those figures, we held in *Thurmond* that the amount of educational expenses awarded was more than the father could pay and was thus an abuse of discretion. Likewise here, the annual $10,000 upper limit of the contribution amount was more than Douglas can pay. When the hearing was held on the contribution petition, Douglas's take-home pay was $2337.90, his monthly living expenses were $1334.56, he was paying $1091.55 per month on credit card debt, and was obligated to pay $656 per month in child support for his younger son, N.K.N. Thus, his living expenses, debt payments and child support obligations exceeded his monthly net income by $744.21. In contrast, the parent's inflation-adjusted net income in *Thurmond* exceeded his living expenses, debt payments, and support obligations by only $8.85.

¶ 18    We thus conclude that the trial court abused its discretion by ordering Douglas to pay up to $10,000 per year for A.J.N.'s educational expenses. Although we may remand to the trial court for entry of an appropriate award, Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) provides that we may "enter any judgment and make any order that ought to have been given or made." As noted, section 513(a) provides that educational expenses may be awarded not only

_____

(https://www.bls.gov/data/inflation_calculator.htm) (last visited Oct. 26, 2020) [https:// perma.cc/ LE3E-YVMU] which shows that $1 in April 1997 had the purchasing power of $1.57 in January 2019.

from a parent's income, but also from his or her property. Douglas's property includes a checking account with a balance of nearly $19,000. It is reasonable for Douglas to contribute half that amount to A.J.N.'s education over the course of four years of college. Accordingly, Douglas should contribute up to $2375 per year. We therefore modify the judgment accordingly.

¶ 19    We note that, inasmuch as Amy has not filed a brief, she has not asked us to review the trial court's decision concerning her own obligation to contribute to A.J.N.'s education, and we have no occasion to do so. We further note that our decision does not change the amount that Amy is required to contribute to A.J.N.'s educational expenses. Each party's obligation is independent of the other's and is calculated solely with respect to the amounts that A.J.N. is responsible for.

¶ 20                                III. CONCLUSION

¶ 21    For the foregoing reasons, we modify the judgment of the circuit court of Lake County to provide that that Douglas shall not be required to pay more than $2375 per year for A.J.N.'s educational expenses. In all other respects, the judgment is affirmed.

¶ 22    Affirmed as modified.