**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220298-U

Order filed October 25, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| IN RE MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 21st Judicial Circuit, |
| TIMOTHY MORAN, | ) | Kankakee County, Illinois. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Appeal No. 3-22-0298 |
| and | ) | Circuit No. 11-D-495 |
| | ) | |
| ROXANNE MORAN, | ) | The Honorable |
| | ) | Adrienne W. Albrecht, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices Brennan and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   Trial court did not abuse its discretion in ordering mother of three to contribute $300 per month to educational expenses of youngest child where mother had substantial debts, limited income, contributed similar amounts to older children, and provided children with housing and paid their expenses during school breaks.

¶ 2    Petitioner Timothy (Tim) Moran and Roxanne were married in 1995 and had three children together. The parties divorced in 2013 and agreed that they would both contribute toward the college expenses of their children if they had the "financial ability to pay." The parties' children

began attending college in 2017, 2019 and 2021 respectively. Tim filed three petitions seeking financial contribution from Roxanne toward the children's college expenses in each of those years. Hearings were held on Tim's petitions from February 2021 to January 2022. In June 2022, the trial court entered an order (1) ruling that Roxanne owed nothing toward the college expenses of the older two children, and (2) requiring her to pay $300 per month for the educational expenses of the youngest child. Tim appeals, arguing that the court should have required Roxanne to pay substantially more of the children's college expenses. We affirm.

¶ 3                                      I. BACKGROUND

¶ 4          Tim and Roxanne were married in 1995. They had three children together: Aidan, born in 1999; Graham, born in 2001; and Gwendolyn (Gwen), born in 2003. In 2011, Tim filed a petition for dissolution of marriage.

¶ 5          On July 10, 2013, the trial court entered a judgment for dissolution of marriage that incorporated a marital settlement agreement (MSA). Pursuant to the MSA, Tim and Roxanne shared joint custody of the children with Roxanne as the primary residential parent. Tim was obligated to pay Roxanne monthly support of $7500, which was allocated as $7400 for maintenance and $100 for child support so that the payments would be almost entirely tax deductible for Tim and taxable to Roxanne. The amount of support was based on Tim's annual gross income as a physician of $260,000, and Roxanne's annual gross income as an x-ray technician of $30,000. The payments were to begin in August 2013 and end in July 2021. Roxanne was awarded the marital residence but had to pay Tim 50% of the equity in the marital residence, which the parties agreed was $142,342.01.

¶ 6          Section 5.1 of the MSA provided in relevant part:

"Pursuant to Section 513 of the Illinois Marriage and Dissolution of Marriage Act, the Husband and Wife shall contribute to the college education or trade school expenses of the child. The Husband's and Wife's obligation is conditioned upon the following:

A. The child has at that time the desire and aptitude for a college education;

B. The college education or trade school is limited to four consecutive years after graduation from high school, except the time shall be extended in the case of serious illness or military service, and

C. The Husband and Wife have the financial ability to pay such college or trade school expenses."

¶ 7        On April 19, 2017, Tim filed a petition to allocate contributions to college educational expenses for Aidan, who was to begin college in August 2017. On September 27, 2019, Tim filed a supplemental petition to allocate contributions to college educational expenses for Aidan, who was then in his third year of college, and Graham, who was then in his first year of college.

¶ 8        The first hearing on Tim's petitions was held on February 4, 2021. At that hearing, Tim testified that his total gross annual income in 2019 was approximately $400,000, and his adjusted gross income was $229,415. Tim projected that his income for 2020 would be "about the same."

¶ 9        Tim testified that Aidan was in his fourth year of college at Columbia College in Chicago. According to Tim, Aidan's college expenses were paid with (1) $49,679 from a college account created during Tim and Roxanne's marriage, (2) $35,882 from Aidan himself, and (3) $71,454 from Tim. Tim testified that Roxanne had not provided any financial contribution toward Aidan's college expenses.

¶ 10        Tim testified that Graham was in his second year of college at University of Illinois. Tim testified that Graham's college expenses have been paid, in part, using a college account totaling

$40,261 created during Tim and Roxanne's marriage. Tim anticipates that Graham's college expenses for four years will total at least $143,924. Tim had no knowledge that Roxanne contributed any amount toward Graham's college expenses.

¶ 11     Tim testified that he owns three properties: a home in Wilmington, valued at approximately $131,000; his residence in Bourbonnais, valued at approximately $370,000 with a mortgage of approximately $175,000; and 40 acres of farmland in Wilmington, valued at $343,000 with an outstanding loan of $150,000, which he used, in part, to pay his children's college expenses. Tim also owns life insurance policies with cash values totaling approximately $160,000, retirement accounts totaling approximately $1,090,000, bank accounts totaling $134,606, and cash of approximately $2,000.

¶ 12     The hearing continued on September 30, 2021. Tim testified that he refigured the cost of Graham's college education and determined it would be $134,625. At the time of the hearing, Tim testified that he had personally contributed $21,548 toward Graham's college expenses, and Graham had used his entire college account totaling $47,471. According to Tim, Gwen had just started attending University of Illinois. Tim testified that Gwen's college education costs at that time were $15,853, which were paid from funds in her college and savings accounts, as well as $900 from him.

¶ 13     The hearing continued on October 1, 2021. On that date, Tim filed a second supplemental petition, seeking contribution from Roxanne for Gwen's college expenses. At the time of that hearing, Tim testified that he had contributed $71,609 toward Aidan's college education and $10,902 for Graham's college expenses.

¶ 14     Roxanne testified that her gross annual income at the time of the hearing was $74,880. She has three retirement accounts: two from her employment and one she was awarded in the divorce,

4

which had belonged to Tim. Roxanne currently contributes to only one retirement account. That account had a value of $103,893.67 as of September 2019, and an estimated value of $153,600 at the time of the hearing. Roxanne's other two retirement accounts had balances of $41,781.71 and $285,145,60 as of March 31, 2021.

¶ 15     Roxanne testified that her work income in 2017 and 2018 was "considerably less" than it was at the time of the hearing because she was undergoing treatment for breast cancer and unable to work full time. She testified that her wages for the prior four years were as follows: $38,847 in 2017; $35,615 in 2018, $34,521 in 2019, and $42,595 in 2020.

¶ 16     Roxanne testified that during breaks from college, her children come home and stay with her, and she pays their expenses. She testified she pays approximately $300 per month for her sons' expenses while they attend college by depositing money into their bank accounts. She also testified that she gives her sons $300 per month for vacations and/or trips throughout the year. Roxanne estimated that her home has a value of $450,000, and she has a mortgage on it totaling $283,268.35. She also has significant IRS and credit card debt.

¶ 17     Roxanne testified about improvements she made to her home. In 2013, she replaced carpeting with hardwood floors in several rooms at a cost of $6,000. In 2016, she had an inground swimming pool installed at a cost of $40,000, and a new concrete walkway installed at a cost of $2,000. In 2017, she purchased a hot tub for $2,863. She also had a shed installed on the property but said that a friend installed it for her at no cost. Roxanne testified she did not save any money for her children's college expenses.

¶ 18     Roxanne testified she was diagnosed with breast cancer in October 2016 and had to undergo multiple surgeries. Her last surgery was in August 2018. During her treatment, she was working less and earning less income. From 2016 to 2018, she paid yearly deductibles of $3,000,

as well as co-pays and additional out-of-pocket medical expenses. She explained that she has high credit card debt, in part, because she used her credit cards to pay some of her medical expenses. Roxanne testified that she has been experiencing a deficiency of approximately $4,000 per month since she stopped receiving monthly support from Tim in July 2021.

¶ 19 The hearing reconvened on January 18, 2022. At that time, Tim testified that Graham was in his fifth semester of college, and Tim had paid $22,763 toward Graham's college expenses. He estimated that Gwen's college expenses will total $132,240. Tim estimated that his gross income for 2021 would be approximately $440,000, and his adjusted gross income would be about $280,000 to $300,000. He testified that he paid an additional $22,000 in college expenses since the prior hearing date.

¶ 20 Roxanne testified that she sold her home because she could not afford it and received net proceeds of approximately $80,000 from the sale. She is temporarily living with a friend and pays $300 in rent and half the utilities. Roxanne testified that she plans to use part of the proceeds of the sale of her home toward a downpayment on a smaller house. She testified that she owes the IRS just under $28,000 in back taxes and recently paid off her Illinois tax deficiency of approximately $5,000.

¶ 21 After that hearing, Roxanne provided the court with the closing statement from the sale of her home, which showed that she received $88,371.49 in net proceeds. She also provided the court with documents showing that she received medical bills totaling over $1300 from December 2021 to January 2022, and purchased a $150,000 home on January 25, 2022. Roxanne put a $30,000 downpayment on that home and obtained a mortgage for $120,000. Roxanne provided the court with an updated financial affidavit, dated February 8, 2022, showing that she has over $52,000 in credit card debt, IRS debt of over $27,000, retirement accounts worth approximately $525,000,

6

and bank accounts with balances totaling just over $13,500. According to her financial affidavit, after Roxanne makes minimal payments on her credit cards and pays her monthly expenses, she has a monthly deficiency of $1,689.96.

¶ 22   On June 28, 2022, the trial court issued its written decision. The court found that Roxanne was a poor money manager while Tim was an "admirable" manager of money. However, the court also noted that it is "immensely easier to manage money when one has resources." The court pointed out that Tim's resources are much greater than Roxanne's because of (1) inheritance, (2) "gross income [of] more than four times that of Roxanne," (3) brighter "future prospects for income," (4) a "substantially higher net worth," and (5) more retirement funds. The court concluded:

> "After considering all of the factors set forth in Section 513 of the Illinois Marriage and Dissolution of Marriage Act, the court has carefully reviewed the financial position of the parties. It concludes that Roxanne has contributed an appropriate share to the education of the children in the form of living expenses during breaks from school and the cash that she provided the children. Going forward, the court concludes that Roxanne should contribute $300 per month to the children's educational expenses until Gwen has either received her undergraduate degree or attended college for a total of eight semesters, whichever occurs first. The payments shall be made directly to Gwen with proof of payment submitted to Tim. She shall also continue to make available housing and living expenses during Gwen and Graham's breaks from school."

¶ 23                                   II. ANALYSIS

¶ 24   Tim argues that the trial court abused its discretion by requiring Roxanne to pay only $300 per month toward Gwen's college expenses. He asks us to enter an order requiring Roxanne to pay

$31,600 of Gwen's college expenses and reimburse him $63,000 for Aidan and Graham's college expenses. Roxanne did not file an appellee's brief. However, we can decide this issue without the aid of an appellee's brief, so we will address the merits of this appeal. See *In re Marriage of Devick*, 335 Ill. App. 3d 734, 742 (2002).

¶ 25 Pursuant to section 513 of the Illinois Marriage and Dissolution of Marriage Act (Act), a court may order one or more parents to pay a child's college expenses after the parents' divorce. See 750 ILCS 5/513(a) (West 2020). However, a court is not required to do so. *In re Marriage of Thurmond*, 306 Ill. App. 3d 828, 834 (1999); *In re Marriage of Pearson*, 236 Ill. App. 3d 337, 351 (1992). The legislative intent of section 513 is to give the trial court discretion. *Id.* (citing *In re Support of Pearson*, 111 Ill. 2d 545, 551 (1986)).

¶ 26 In determining whether a parent should be ordered to pay a child's educational expenses, the court shall consider all relevant factors, including: "(1) [t]he present and future financial resources of both parties to meet their needs, including, but not limited to, savings for retirement[;] (2) [t]he standard of living the child would have enjoyed had the marriage not been dissolved[;] (3) [t]he financial resources of the child[; and] (4) [t]he child's academic performance." 750 ILCS 5/513(j)(1-4) (West 2020). Based on these factors, "the court shall set an award that falls within respondent's economic capacity." *Thurmond*, 306 Ill. App. 3d at 834.

¶ 27 The trial court must evaluate a party's ability to pay based on the party's resources at the time of the hearing. *Id.* "The court should not order a party to pay more for educational expenses than he or she can afford." *In re Support of Pearson*, 111 Ill. 2d at 552. When a parent has limited financial resources, it is proper for the trial court to order the parent to contribute only a small amount to a child's educational expenses. See *id.* at 548, 552 (affirming trial court order requiring father to pay child $100 per month for two years for degree estimated to cost $28,000).

8

¶ 28    In determining how much a custodial parent should be ordered to contribute toward a child's educational expenses, it is proper for the court to consider that a custodial parent incurs expenses when a child comes home during school breaks. See *In re Marriage of Korte*, 193 Ill. App. 3d 243, 249-50 (1990). It is also appropriate for the trial court to consider how much a parent contributed to their older children's college expenses. See *Pearson*, 111 Ill. 2d at 551.

¶ 29    A trial court's determination of an award of educational expenses will not be disturbed absent an abuse of discretion. *Thurmond*, 306 Ill. App. 3d at 834. "A trial court abuses its discretion only where no reasonable person would take the view adopted by the trial court." *In re Marriage of Schneider*, 214 Ill. 3d 152, 173 (2005). A trial court abuses its discretion by ordering a parent to pay more in college expenses than the parent can reasonably afford. See *Thurmond*, 306 Ill. App. 3d at 834-35; *In re Marriage of Fahy*, 208 Ill. App. 3d 677, 698 (1991); *In re Marriage of Calisoff*, 176 Ill. App. 3d 721, 730 (1988).

¶ 30    Here, the trial court carefully considered the relevant factors set forth in section 513 of the Act (750 ILCS 5/513(j) (West 2020)), particularly the parties' present and future incomes and financial resources. The trial court noted that Tim has substantially greater assets than Roxanne because he received property through inheritance and his income is more than four times greater than Roxanne's. The trial court also found that Tim has much greater potential for higher future income because of his advanced education. Finally, the trial court stated that even though both parties have substantial retirement accounts, the balance of Tim's retirement account is much greater. In fact, Tim's retirement funds are more than twice Roxanne's.

¶ 31    In reaching its decision, the trial court properly evaluated Roxanne's ability to pay and determined that Roxanne does not have the financial means to contribute more than $300 per month toward her children's educational expenses. The trial court's ruling is supported by the

evidence, which shows that Roxanne has substantial credit card and IRS debt and a net deficiency of $1689.96 each month after paying her necessary expenses. The trial court also properly considered that Roxanne has provided support to the children by providing them with a place to stay and paying their expenses during school breaks and ordered that she continue to do so for Gwen and Graham. See *Korte*, 193 Ill. App. 3d at 249-50. Based on the circumstances of this case, the trial court's order was not an abuse of discretion.

¶ 32                                    III. CONCLUSION

¶ 33         The judgment of the circuit court of Kankakee County is affirmed.

¶ 34         Affirmed.