In re MARRIAGE OF MARGARET A. WINTERS, n/k/a Margaret A. Archer, Petitioner-Appellee, and JAMES E. WINTERS, Respondent-Appellant.

Second District   No. 2—86—1036

Opinion filed September 1, 1987.

James E. Winters, of Kings, appellant *pro se.*

Steven L. Nordquist, of Nordquist Law Offices, Ltd., of Rockford, for appellee.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

James E. Winters (James) appeals the entry of the judgment of the circuit court of Winnebago County awarding an increase in sup-

port for his adult daughter Angela pursuant to a petition for modification brought by his former wife, Margaret A. Archer (Margaret), under section 513 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act). Ill. Rev. Stat. 1985, ch. 40, par. 513.

The parties were divorced in 1972. They have two daughters, Angela born in 1967 and Diane born in 1969. In 1986, Margaret filed a petition to modify the 1972 decree to provide for the continuation and increase of child support for Angela although she had attained her majority. Margaret alleged that Angela suffers from a mental handicap entitling Angela to post-minority support. The petition also sought a continuation of support for Diane when she turns 18 by reason of the continuation of her education by attending college. The trial court ruled that the latter request was untimely as Diane had not yet reached majority. Therefore, continued and increased support for Diane is not an issue in this appeal. Margaret sought a total increase to 25% of James' net earnings for the continued support of both children.

The trial court found that the parties' daughter Angela, while having attained her majority, was mentally disabled. The court ordered that James pay support for Angela, in spite of her majority, by reason of her mental disability, in the amount of $155.27 per week, being 20% of James' weekly net income of $776.35.

James, appealing *pro se*, contends that: (1) since the divorce act in effect at the time of the parties' divorce in 1972 did not provide for the payment of child support for a mentally disabled child, the entry of the modification order in the instant case was beyond the jurisdiction of the circuit court; (2) since Angela is an adult, she is no longer in the legal custody of Margaret, who, therefore, has no standing to claim post-minority child support for Angela; (3) the trial court erred in not dismissing the amended petition wherein it alleged only that Angela suffered a "mental handicapp [*sic*]" and not that she was "mentally *** disabled," the precise language of the statute (Ill. Rev. Stat. 1985, ch. 40, par. 513(a)); (4) James has been denied due process of law because a duty has been imposed upon him to support his adult child because he is a divorced father when that duty is not imposed upon fathers who are not divorced and he was not given notice that he might be subjected to payment of adult child support when the 1972 divorce claim was originally filed; (5) the equitable doctrines of *laches*, equitable estoppel and *res judicata* bar the assertion of a claim for post-minority child support 15 years after the entry of the original divorce decree; (6) the finding of the trial court that Angela has a mental disability was against the manifest weight of the evidence; (7)

the petition failed to allege a substantial change in circumstances as required by section 510 (Ill. Rev. Stat. 1985, ch. 40, par. 510); (8) counsel for Margaret took unfair advantage of James, a *pro se* litigant, by "smuggling" into the record an amended petition for modification so as to cure an alleged fatal defect in the original petition wherein it failed to allege Angela was mentally "disabled," by filing contempt proceedings against James for failure to pay alleged arrearages in child support and then removing the case from the docket the day the case was to be heard, thus inconveniencing James, and by harassing James during discovery (James claims the latter three issues alleged violations of the Code of Professional Responsibility, Supreme Court Rules 7—106(c)(5)(7) and 7—106(d) (107 Ill. 2d Rules 7—106(c)(5)(7), (d))); and (9) that the trial judge violated the Standards of Judicial Conduct, Rule 61(c)(5) (103 Ill. 2d R. 61(c)(5)), by being partial, biased and prejudiced in allowing improper amendment of Margaret's pleadings and the attachment of exhibits thereto, by displaying obvious leniency to Margaret's counsel and by ignoring James' pleadings, motions and unobjected to requests for discovery.

Margaret characterizes this appeal as raising the single issue of whether the trial court abused its discretion: (l) in finding that Angela was mentally disabled, and (2) by ordering James to pay 20% of his net earnings as child support. She argues that the judgment of the trial court should only be reversed where an abuse of discretion occurred, that is, only where it can be said that no reasonable person would adopt the view taken by the trial judge. (See *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126.) Margaret maintains that the evidence of Angela's mental disability was such that no reasonable person could adopt a view different from that of the trial court, and that the judgment of the trial court should be affirmed.

■■ ■ An examination of the report of proceedings discloses that James made no objection to the evidence adduced by Margaret during the presentation of her case in chief. Thus, we conclude that James has waived any issue relating to the admission of evidence. Nor do we view James' general request of the trial court that he be considered to have objected to all issues which he may wish to raise on appeal as constituting a sufficient objection to preserve his right to appeal on any issue to which he failed to timely object in the trial court. An objection must be made to alleged incompetent evidence at the time of its admission. (*Graves v. North Shore Gas Co.* (1981), 98 Ill. App. 3d 964, 424 N.E.2d 1279.) The failure to object at the original proceeding constitutes a waiver of the right to raise the issue on appeal (*E&E*

*Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 481 N.E.2d 664), although an objection to the court's jurisdiction is not waived by the prior failure to make the objection. *Carillo v. Jam Productions, Ltd.* (1983), 97 Ill. 2d 371, 454 N.E.2d 649.

■ A litigant appearing *pro se* in the appellate court is obliged to follow the same rules as a litigant represented by counsel. (*Biggs v. Spader* (1951), 411 Ill. 42, 103 N.E.2d 104.) It is apparent from James' brief that he has not followed the supreme court rules regulating appellate practice. (107 Ill. 2d R. 301 *et seq.*) The result is that the cost of research on the multitude of issues he raises has fallen upon the court. This results in the taxpayer paying for that which James is obligated to provide the court. Further, the inadequacy of his brief imposes a burden upon appellee and, conceivably, encourages appellee to claim a lack of understanding and, thus, affords appellee the ability to avoid discussion of issues which would be, at least facially, arguable if they had been presented in accordance with the rules of appellate practice.

■ James has failed to cite to the record and to provide citations to authority for his arguments. These serious shortcomings cause his brief to be in violation of Supreme Court Rules 341(e)(6) and (7). (See *Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 453 N.E.2d 1133; see also *Deckard v. Joiner* (1970), 44 Ill. 2d 412, 255 N.E.2d 900.) James' *seriatim* listing of cases without identifying the legal points of his argument for which they purport to be legal authority and without citation to the proper page of those cases wherein the authority is found does not satisfy the rule requiring citation to legal authority. Arguments made without citation of supporting authority are deemed waived on appeal. (*Pauly v. Werries* (1984), 122 Ill. App. 3d 263, 461 N.E.2d 54.) The party who thus waives the question is bound by his waiver, but the court, which has the responsibility of reaching a just decision, is not so bound. (*Augsburg v. Frank's Car Wash, Inc.* (1982), 103 Ill. App. 3d 329, 333, 431 N.E.2d 58.) We will address those issues which were properly preserved in the trial court or which are necessary to a just result, and we deem waived all other issues not properly preserved by objection in the trial court or for which James had not cited legal authority.

■■ First, we address the only argument which James has conceivably preserved for appeal by the making of an objection, although its timeliness is questionable. At the hearing on the entry of the court's written order, James objected to the court's allowance, during the earlier evidentiary hearing, of Margaret's motion to amend her petition to substitute "disability" for "handicapp [*sic*]." We consider James' dis-

tinction between "disability" and "handicap" to be a distinction without a difference. Webster's Third New International Dictionary defines "handicap" as a "disadvantage that makes achievement unusually difficult," and it defines "disability" as "the inability to pursue an occupation or perform services for wages because of physical or mental impairment." (Webster's Third New International Dictionary 1027, 642 (1981).) We perceive no functional difference between these definitions generally and as applied to Angela specifically. Pleadings are to be liberally construed (*Fleshner v. Copeland* (1958), 13 Ill. 2d 72, 147 N.E.2d 329), because the purpose of pleadings is to inform the defendant of the plaintiff's claim. No pleading is bad in substance which contains such information as reasonably informs defendant of the nature of the claim which he is called upon to meet. (*Anixter Brothers, Inc. v. Central Steel & Wire Co.* (1984), 123 Ill. App. 3d 947, 463 N.E.2d 913.) Additionally, the law permits liberal amendment of pleadings. (*Anderson v. Rick's Restaurant & Cocktail Lounge* (1977), 45 Ill. App. 3d 992, 360 N.E.2d 465.) In the instant case, the trial court did not err in allowing Margaret to amend her pleadings, particularly where James is unable to demonstrate that he was prejudiced (see *Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 437 N.E.2d 872) other than being frustrated in what appears to be an obstinate insistence on the use of the precise language of the statute.

■ James next questions whether Margaret adequately pleaded or proved a substantial change in the parties' or the child's circumstances to warrant a modification of the earlier divorce decree. Section 510 of the Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 510) establishes such a standard for the modification of child support awarded under section 505 (Ill. Rev. Stat 1985, ch. 40, par. 505). However, it appears that the obligation to support adult children under the circumstances described in section 513 (Ill. Rev. Stat. 1985, ch. 40, par. 513) may be a substantive obligation unrelated to the terms of any prior divorce decree. Therefore, it may not have been necessary for Margaret to so plead or prove changed circumstances. However, this issue was not raised by the parties, and we conclude that it is clear that the gravamen of Margaret's petition was Angela's transition from her minority to her majority, which would ordinarily work an automatic cessation of James' support obligation. (Ill. Rev. Stat. 1985, ch. 40, par. 510(c); *In re Marriage of Thompson* (1979), 79 Ill. App. 3d 310, 398 N.E.2d 17; *Crane v. Crane* (1964), 45 Ill. App. 2d 316, 196 N.E.2d 27.) The change in circumstances alleged is that Angela attained her majority while mentally disabled or handicapped. This circumstance is specifically recognized in the Marriage Act,

which provides in section 513:

"The court may award sums of money out of the property and income of either or both parties for the support of the child or children of the parties who have attained majority and are not otherwise emancipated only when such child is mentally or physically disabled; and the application therefor may be made before or after such child has attained majority age. The Court also may make such provision for the education and maintenance of the child or children, whether of minor or majority age, out of the property and income of either or both of its parents as equity may require, whether application is made therefor before or after such child has, or children have, attained majority age. In making such awards, the court shall consider all relevant factors which shall appear reasonable and necessary, including:

(a) The financial resources of both parents.

(b) The standard of living the child would have enjoyed had the marriage not been dissolved.

(c) The financial resources of the child." Ill. Rev. Stat. 1985, ch. 40, par. 513.

See *In re Marriage of Donahoe* (1983), 114 Ill. App. 3d 470, 448 N.E.2d 1030; see also *In re Marriage of Taylor* (1980), 89 Ill. App. 3d 278, 411 N.E.2d 950.

■ Further, a review of Margaret's testimony and exhibits, to which James did not object, established that Angela was mentally disabled. Other than a semantical argument regarding "handicapped" as opposed to "disabled," James makes no substantive challenge as to Angela's condition.

James offered no evidence to contradict that which was presented by Margaret. He never put himself forward to testify, and, when called upon to testify as an adverse witness, the following colloquy ensued:

"MR. NORDQUIST [Margaret's Counsel]: I'd like to call the Defendant as an adverse witness to the stand.

THE COURT: Okay. This is—He has a right to do that under Supreme Court Rules.

MR. WINTERS: Pardon me?

THE COURT: He wants to call you as a witness. (Whereupon, the clerk administered the oath.)

MR. WINTERS: No.

THE COURT: Then he can't be called as a witness because he's not going to answer the questions truthfully.

What she was asking, some people affirm rather than to swear. They don't take an oath because of their religious or other principles. If that's the reason that you won't do it and you're willing to affirm somehow that you're going to tell the truth, fine, then you can testify. If you're not going to tell the truth, you're not going to agree to tell the truth, then you can't testify because we don't know what to believe or what not to believe.

MR. WINTERS: I'm sorry, your Honor, but I'm a pathological liar. I can't tell the truth. That's my religious belief.

THE COURT: Don't tell me you're a pathological liar. I don't believe that. But that means you can't tell the truth on anything, that—is that your religious belief, you can't tell the truth on anything?

MR. WINTERS: Okay. I guess so.

THE COURT: All right, then, have a seat."

■ Next, and again without citation to legal authority in violation of Supreme Court Rule 341(e)(7) (107 Ill. 2d R. 341(e)(7)), James contends that the court did not have jurisdiction to enter the order appealed from. However, it is well established that the circuit court has original jurisdiction over all justiciable matters (Ill. Const. 1970, art. VI, sec. 9) and specifically to order support payments. See *Stecher v. Stecher* (1973), 16 Ill. App. 3d 297, 306 N.E.2d 86; see also *Crawley v. Bauchens* (1973), 13 Ill. App. 3d 791, 300 N.E.2d 603, *aff'd* (1974), 57 Ill. 2d 360, 312 N.E.2d 236.

Further, although not previously provided for by statute, Illinois courts have long recognized a support obligation for mentally and physically disabled children continuing after the attainment of the age of majority. See, *e.g.*, *Strom v. Strom* (1957), 13 Ill. App. 2d 354, 142 N.E.2d 172; see also *Freestate v. Freestate* (1927), 244 Ill. App. 166; Ill. Ann. Stat., ch. 40, par. 513, Historical and Practice Notes, at 788 (Smith-Hurd 1980).

■ James also challenges Margaret's standing to sue. He contends, in effect, that Angela is the real party in interest. However, it cannot be gainsaid that Margaret has a beneficial interest in the financial income of Angela, who is not only her child, but is also a person with whom Margaret shares her household. Like James, Margaret is jointly and severally obligated by section 513(a) to support their mentally disabled adult child. One having a beneficial interest in the subject matter of the suit and the relief sought is a proper party to sue. *Long v. Elk Grove Village* (1978), 64 Ill. App. 3d 1006, 382 N.E.2d 79.

Without directing our discussion to any other specific issues raised by James, which we have deemed waived, we make the following general observations drawn from Illinois case law which support the action of the trial court in the instant case: A child's support needs are determined in reference to the financial resources of the parties to the dissolution of the marriage and the child individually, the standard of living the child would have enjoyed had the marriage not dissolved and the physical, emotional and educational needs of the child (Ill. Rev. Stat. 1985, ch. 40, par. 505; *In re Marriage of Dulyn* (1980), 89 Ill. App. 3d 304, 411 N.E.2d 988); a trial court has broad discretion in determining the necessity for and the amount of child support, and its decision will not be set aside unless contrary to the manifest weight of the evidence (*In re Marriage of Mitchell* (1981), 103 Ill. App. 3d 242, 430 N.E.2d 716); the circuit court has authority to modify child support provisions in a judgment of divorce entered pursuant to a settlement agreement (Ill. Rev. Stat. 1985, ch. 40, pars. 502(f), 510(a); *Powers v. Powers* (1979), 69 Ill. App. 3d 485, 388 N.E.2d 76); the trial court has jurisdiction to consider future child support in a dissolution proceeding and need not expressly retain jurisdiction (*In re Marriage of Petramale* (1981), 102 Ill. App. 3d 1049, 430 N.E.2d 569); the original divorce decree awarding child support payments is *res judicata* only so long as there is no change in the circumstances underlying the decree (*In re Sharp* (1978), 65 Ill. App. 3d 945, 382 N.E.2d 1279); and, the decision to modify the child support award rests within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion (*Schmerold v. Schmerold* (1980), 88 Ill. App. 3d 348, 410 N.E. 2d 629).

We deem waived James' contention that, as a divorced father compelled to pay adult support, he is denied equal protection of the law because nondivorced fathers allegedly cannot be compelled to support their adult children. However, we draw his attention to a provision in section 11—29.1—6 of the Municipal Code, which provides:

> "The board of directors may impose a maintenance charge upon the estate of any mentally deficient person receiving the benefits of the facilities or services prescribed ***. If the estate of such person is insufficient, *the parent or parents of such person are liable for the payment of the amount due.* (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 24, par. 11—29.1—6.)

Thus, it is apparent that there are circumstances where a father, divorced or not, may be called upon to support an adult mentally deficient child.

Finally, James raises issues which while waived are nonetheless not

meritorious. He complains that the conduct of the trial judge and the attorney denied him a fair trial. We disagree. The trial court was particularly indulgent of James' lack of familiarity with trial practice and extended him appropriate consideration of his motions and requests. James was not denied a fair trial by the conduct of the trial court. Nor can we find that Margaret's counsel took advantage of James. For example, James' complaint that counsel smuggled a document into the record is unfounded where the record discloses that counsel's motion to amend the pleadings was allowed by the trial court. In any event, the amendment was unnecessary as we have already held that the difference between handicapped and disabled is a distinction without a legal difference. Had the amendment been improperly made or allowed, it would have been harmless nonetheless.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

NASH and INGLIS, JJ., concur.