2024 IL App (1st) 232202-U

THIRD DIVISION
July 24, 2024

No. 1-23-2202

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF NICOLAS DUMORTIER, | ) | Appeal from the Circuit Court of Cook County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 2021 D 005644 |
| | ) | |
| JORIE LYNN TAYLOR, | ) | |
| | ) | Honorable Abbey Fishman Romanek, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1   ***Held:***   We affirm the judgment of the circuit court because respondent's *pro se* claims do not establish error on the part of the trial court.

¶ 2   Petitioner Nicolas DuMortier (Nicolas) filed a petition for the dissolution of his marriage with respondent Jorie Lynn Taylor (Jorie).  Jorie filed a response and counter-petition for declaratory judgment.  The trial court entered a default order of judgment dissolving the parties' marriage and a default allocation judgment concerning parental responsibility for the parties' minor child.  Proceeding *pro se* on appeal, Jorie raises multiple issues as to the trial court's order. We affirm.

¶ 3                                    BACKGROUND

¶ 4      Nicolas and Jorie were married in November 2018. On June 30, 2021, Nicolas filed his petition for dissolution of marriage. Nicolas stated in his petition that the parties had one child, M.D., who was born in January 2020. Among other things, Nicolas sought full decision-making authority and the majority of parenting time with M.D., and he further asked that Jorie (1) be denied parenting time, (2) provide child support for M.D., and (3) provide maintenance to Nicolas. On July 29, 2021, Jorie filed a *pro se* appearance stating that she agreed to receive court documents via her personal e-mail address.

¶ 5      On August 24, 2022, Nicolas filed a motion for a mental health and substance abuse examination pursuant to Illinois Supreme Court Rule 215(a) (Ill. S. Ct. R. 215(a) (eff. Jan. 1, 2018)). Nicolas stated that, although M.D. was residing with Jorie and her father, Nicolas had "grave concerns" regarding M.D.'s well-being because of Jorie's "serious mental health issues and *** history of substance abuse," Jorie's father's history of substance abuse, and the fact that Jorie's father suffers from "significant brain damage" preventing the father from monitoring Jorie's behavior with M.D. Nicolas frequently found Jorie and her father arguing and intoxicated.

¶ 6      Nicolas further explained that, on June 23, 2021, Jorie had been institutionalized for five days in a psychiatric hospital following incidents where Nicolas discovered, *inter alia*, a dish containing an orange "amphetamine salts" pill next to one of M.D.'s bottles, which also contained orange-colored water. Nicolas also witnessed Jorie "growl[ing] at" M.D. and exposing her breasts to M.D. after M.D. ran toward her with open arms. According to Nicolas, Jorie was also "speaking in tongues" and told Nicolas she did not know what "reality" was. After first responders sedated and took Jorie to a psychiatric hospital, the Illinois Department of Children and Family Services (DCFS) enacted a "safety plan" resulting in M.D. being placed in Nicolas' care. Finally, Nicolas

explained that a prior order of protection he had obtained against Jorie had been subsequently dismissed in September 2021 due to a misunderstanding on his part.

¶ 7    Also on August 24, 2022, Nicolas filed a petition for (1) temporary and permanent allocation of sole parental responsibilities and (2) appointment of a guardian *ad litem*. Nicolas stated that he had been M.D.'s primary caretaker since M.D.'s birth and had made "virtually all" of the significant decisions for M.D. with "little involvement" from Jorie. Nicolas' petition on this matter reiterated the incidents described in his motion for a Rule 215(a) examination of Jorie.

¶ 8    On September 14, 2022,[1] Nicolas filed an emergency *ex parte* petition to suspend Jorie's parenting time and to grant Nicolas (1) immediate temporary custody of M.D. and (2) "temporary allocation of sole parental responsibilities." Nicolas stated in his motion that, at around 10 a.m. on September 13, 2022, the Downers Grove Police Department (DGPD) called him and advised him to pick up M.D. from the police department as soon as possible. The police department stated that they took possession of M.D. following an "incident" involving Jorie and M.D., and all of Jorie's family members "refused to care for" M.D. Nicolas stated that the DGPD was called in response to reports that Jorie had been "going door-to-door, breaking into homes in and around [her] residence, and hiding inside the same with [M.D.]" When Nicolas arrived at the police station, a DCFS case worker said that Jorie had refused a mental health evaluation.

¶ 9    On September 15, 2022, the trial court held an *ex parte* hearing on Nicolas' petition, at the conclusion of which the court granted the emergency petition. The court found that Jorie posed "a serious endangerment" to M.D., suspended her parenting time with M.D., and awarded immediate "possession" as well as sole decision-making responsibility for all decisions concerning

---

[1] The trial court's order granting this emergency petition indicated that Nicolas filed the petition on September 14, 2022. We note, however, that the online records of the circuit court and the circuit clerk's file stamp on the emergency petition indicate a filing date of September 16, 2022 (the day *after* the date of the trial court's order granting the emergency petition).

M.D. on a temporary basis to Nicolas until further order of the court. The court then continued the matter to September 28, 2022, for status via videoconference. On September 28, 2022, the trial court appointed Erin Masters as the guardian *ad litem*. Masters filed her appearance on September 29, 2022.

¶ 10    On May 1, 2023, Nicolas filed a petition for attorney fees and costs, arguing in substance that Jorie's conduct has caused him to incur additional attorney fees. In particular, Nicolas explained that, despite a prior court order to do so, Jorie failed to establish an account with the "OurFamilyWizard" online portal, which resulted in multiple communications having to be communicated through counsel rather than the portal. In addition, when Nicolas brought M.D. to a local hospital in Michigan, Jorie was alleged to have falsely told hospital staff that Nicolas " 'absconded to Michigan with [M.D.]' " despite knowledge of a prior trial court order allowing Nicolas to relocate to Michigan with M.D. According to Nicolas, Jorie's false statements to hospital staff "resulted in extreme confusion" and ultimately required his attorney to speak with the hospital's attorney and provide that individual with relevant court orders establishing Nicolas' lawful possession of M.D. Nicolas asked that Jorie pay $5,250 of his attorney fees.

¶ 11    On May 2, 2023, Nicolas filed a petition to set temporary and permanent child support and contribution to child-related expenses. Nicolas stated that upon information and belief, Jorie was "voluntarily unemployed," but she is "able-bodied and has the ability to obtain gainful employment" sufficient to pay guideline child support to M.D. Nicolas asked that, in the event that Jorie fails to secure gainful employment, the trial court enter an order imputing gross annual income to her based upon her education, earning capacity, and income potential.

¶ 12    On July 12, 2023, the trial court entered a written order indicating that the cause came before the court for status and that Jorie appeared in person *pro se*. The court continued the matter

to August 16, 2023, for a "pretrial conference on all issues" and a hearing on Nicolas' petitions for child support, contribution to child-related expenses, and "attorney's fees and costs."

¶ 13    On July 14, 2023, Nicolas filed a second petition for interim and prospective attorney fees and costs. In this petition, Nicolas stated that his attorney has been paid $13,448 but there was still an outstanding balance of $21,757.25, whereas Jorie has no attorney fees because she is representing herself. Nicolas then added that, with respect to the parties' resources, Nicolas earned just under $42,000 annually whereas Jorie obtained an employment offer as a general manager at "The Exchange" restaurant with an annual salary of $100,000. Nicolas added that he believes Jorie further receives "significant income in the form of cash gifts from her family members and her paramour." Nicolas asked that Jorie pay $15,000 to his counsel.

¶ 14    On August 1, 2023, the trial court issued an order noting that the cause had come before it for "presentment" of Nicolas' petition for "interim and prospective attorney fees and costs." The court's order, however, noted that Jorie had failed to appear. The court thus continued the matter to a previously set hearing and pretrial conference at 10:30 a.m. on August 16, 2023. The order indicated it was sent to Jorie's e-mail address that she had listed in her initial *pro se* appearance.

¶ 15    On August 16, 2023, the trial court issued a written order noting that the cause came before the court for a hearing and pretrial conference and that it was "fully advised in the premises." The order noted that Nicolas and the guardian *ad litem* appeared, but Jorie had not and was therefore in default. The court awarded child support in favor of Nicolas and against Jorie in the amount of $1,206 per month. The court also ordered that, with respect to payment for child-related expenses, Jorie would be responsible for 70% of the expenses and Nicolas would be responsible for the remaining 30%. Next, the court awarded Nicolas $4,824 in retroactive child support (subject to 9% annual interest) and directed Jorie to pay Nicolas $150 per month in addition to her statutory monthly guideline child support obligation. The court then ordered Jorie to pay Nicolas $1,065.44

for her 70% contribution to prior child-related expenses. In a separate order, the court stated that no consideration of additional parenting time would be given to Jorie until she was compliant with the recommendations of the "[Rule] 215 [examination], including therapy ***, hair follicle testing, etc." Finally, the court continued the matter to September 19, 2023.

¶ 16    On September 18, 2023, the trial court received a letter with Jorie's typed name at the bottom. The letter asked the court to "accept my Motion to Vacate previous orders entered on 8/16/2023" and stated that, as a "*pro se* representative [*sic*]," she had limited access to the full case docket. The author asserted that opposing counsel and the guardian *ad litem* "failed to circulate important documents" in the case. The author asked to "be heard in this case" and "formally and sincerely apologize[d]" for failing to appear at the prior court date. The author stated it was a "genuine error," the author made an "attempt" to appear via Zoom at 11 a.m. and left the author's place of employment to "go to the Daley Center and submit an Emergency Motion." On September 26, 2023, the trial court ordered Jorie's "filings filed on September 18, 2023" stricken with prejudice because she failed to appear. The cause was then continued to October 20, 2023.

¶ 17    On October 20, 2023, the trial court entered a default allocation judgment of parental responsibilities and parenting plan. The court directed that Nicolas would have sole rights and responsibilities regarding the rearing and overall well-being of M.D. and would be solely responsible for making any and all significant decisions involving M.D.'s health, education, welfare, religious upbringing, extracurricular activities, and lessons. With respect to parenting time, the court noted that it had found Jorie posed a serious endangerment to M.D. on September 15, 2022. The court thus ordered that her parenting time would be reserved until further order of the court and her completion of the "recommendations of the Illinois Supreme Court Rule 215 Evaluator." The court specifically ordered Jorie to do the following prior to it considering any request from Jorie for parenting time: (1) undergo drug testing, (2) complete a parenting skills

class, and (3) attend in-person weekly psychotherapy for a minimum of six months and show compliance with the treatment plan and recommendations. The court stated that, upon completion of the specified items and the court thereafter allowing parenting time, any such parenting time would be supervised by "a professional qualified to assess for lucidity and appropriate behavior." The court further noted that Nicolas waived maintenance, and it ordered that Jorie would be barred from asserting any rights to maintenance because of her "continuing and conjugal cohabitation with a significant other." Finally, the court's order stated that "there is no just reason for delaying enforcement or appeal" of the default judgment.

¶ 18 On October 23, 2023, Jorie filed a motion to reconsider the trial court's order dated October 20, 2023. The trial court dismissed Jorie's motion with prejudice on October 31, 2023.

¶ 19 On November 21, 2023, Jorie filed her *pro se* notice of appeal indicating that she sought to appeal from the trial court's orders entered on August 16, 2023, September 18, 2023, and "10/24/2023 [*sic*]." On December 11, 2023, Nicolas filed a motion to dismiss this appeal for want of jurisdiction. Nicolas argued in essence that Jorie's notice of appeal was untimely. We ordered the motion taken with the case. This appeal follows.

¶ 20                                    ANALYSIS

¶ 21 Jorie's brief raises multiple issues, but she has grouped them into two argument points in her brief. Before considering her arguments on appeal, however, we must discuss our jurisdiction as well as Jorie's briefs and the state of the record on appeal.

¶ 22                                   Jurisdiction

¶ 23 At the outset, Nicolas filed a motion to dismiss this appeal as untimely, which we ordered taken with the case. Nicolas reiterates this claim in his brief. Regardless of whether a party raises it, a reviewing court has a duty to consider its jurisdiction and dismiss the appeal if it determines

that jurisdiction is wanting. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 251-52 (2010) (quoting *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984)).

¶ 24 Illinois Supreme Court Rule 301 allows appeals from final judgments as a matter of right. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); see also Ill. Const. 1970, art. VI, § 6. In other words, subject to certain exceptions, an appeal can be taken in a case only after the trial court has resolved all claims against all parties. *State Farm Fire & Casualty Co. v. John J. Rickoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 556 (2009).

¶ 25 Supreme Court Rule 304(a) provides one such exception. Rule 304(a) states, "If *** multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the *** claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Notably, however, among the judgments that are appealable without the necessary findings under Rule 304(a) is a "custody or allocation of parental responsibilities judgment or modification of such judgment entered pursuant to the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.*)." Ill. S. Ct. R. 304(b)(6) (eff. Mar. 8, 2016); see also *In re Marriage of Tener & Walter*, 2024 IL App (1st) 220890, ¶ 18 n.2 (acknowledging Rule 304(b)(6)).

¶ 26 With respect to the time to file a notice of appeal, Supreme Court Rule 303(a)(1) provides in relevant part that a notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, "if a timely posttrial motion directed against the judgment is filed, *** within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). It is well established that a motion to reconsider is a postjudgment motion that must be filed within 30 days after the challenged judgment is entered. See *Archer Daniels Midland*

*Co. v. Barth*, 103 Ill. 2d 536 (1984). With certain exceptions not relevant here, a timely filed posttrial motion stays enforcement of the judgment attacked. 735 ILCS 5/2-1202(d), 5/2-1203(b) (West 2022). Therefore, the time for appeal does not begin to run until the trial court rules on the postjudgment motion. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 27 Here, the trial court issued its default order allocating parental rights and responsibilities on October 20, 2023. On October 23, 2023, Jorie filed a *pro se* motion to reconsider the order of October 20, 2023. This filing had the effect of tolling the time for filing a notice of appeal. See *id.* The court dismissed the motion to reconsider with prejudice on October 31, 2023, at which point Jorie had 30 days to file her notice of appeal. Her *pro se* notice of appeal, which she filed on November 21, 2023, was well within the 30 days required. Accordingly, her notice of appeal is timely, and this court has jurisdiction to consider her appeal. We therefore deny Nicolas' motion to dismiss this appeal for want of jurisdiction, which he filed on December 11, 2023.

¶ 28 Appellant's Brief and the Record on Appeal

¶ 29 Before considering the merits of this appeal, however, we note that Jorie's *pro se* brief does not comport with our supreme court rules in multiple ways. First, there is no statement of facts. Supreme Court Rule 341(h)(6) requires an appellant to provide the "facts necessary to an understanding of the case." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Jorie's failure to include a statement of facts has resulted in an unnecessary delay in resolving the important issues raised in this appeal. In addition, Jorie has failed to include a proper table of contents (in violation of Rule 341(h)(1)), a certificate of compliance (in violation of Rule 341(c)), and an appendix to the record

on appeal (in violation of Rules 341(h)(9) and 342).  See generally, Ill. S. Ct. R. 341 (eff. Oct. 1, 2020); Ill. S. Ct. R. 342 (eff. Oct. 1, 2019).[2]

¶ 30    In stark contrast, the "statutes involved" section of her brief spans 13 pages and includes excerpts from the Illinois constitution, Illinois Supreme Court rules, Cook County Circuit Court rules, the "Illinois Code of Judicial Conduct [of 2023]" (the judicial conduct code), and the Illinois Rules of Professional Conduct of 2010.  There is, however, no reference to section 2-1301(d) of the Code of Civil Procedure (735 ILCS 5/2-1301(d) (West 2022)), the statute pursuant to which the trial court entered its default judgment on August 16, 2023.

¶ 31    Turning to the record on appeal, we have a report of proceedings for only one hearing:  the "prove-up" hearing on the default allocation judgment on October 20, 2023.  There is no transcript (or acceptable substitute) for the hearing on August 16, 2023, nor any other hearing date.  Illinois Supreme Court Rules 321 and 324 require an appellant to provide a complete record on appeal, including a certified copy of the report of proceedings.  See Ill. S. Ct. R. 321 (eff. Oct. 1, 2021); Ill. S. Ct. R. 324 (eff. July 1, 2017).  If a verbatim transcript is unavailable, the appellant may file an acceptable substitute, such as a bystander's report or an agreed statement of facts, as provided for in Rule 323.  See Ill. S. Ct. R. 323 (eff. July 1, 2017).  The burden of providing a sufficient record on appeal rests with the appellant (here, Jorie). *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005); *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).  In the absence of such a record, we must presume the trial court acted in conformity with the law and with a sufficient factual basis for its findings. *Id.* at 392.  Furthermore, any doubts arising from an incomplete record will be resolved against the appellant. *Id.*  This is particularly true "when the judgment

---

[2] Jorie's brief also seems to lack a proof of service upon Nicolas as required by Rule 341(e) (Ill. S. Ct. R. 341(e) (eff. Oct. 1, 2020)), but we note that Nicolas raises no issue in his appellee's brief regarding whether he was properly served with Jorie's brief.

order states that the court is fully advised in the premises." *Dell'Armi Builders, Inc. v. Johnston*, 172 Ill. App. 3d 144, 149 (1988).

¶ 32    Supreme court rules are not mere suggestions; they are rules that must be followed. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. Moreover, it is a deeply rooted principle that a litigant appearing in this court *pro se* must follow the same rules as a litigant represented by counsel. *In re Marriage of Winters*, 160 Ill. App. 3d 277, 281 (1987) (citing *Biggs v. Spader*, 411 Ill. 42 (1951)). We have the inherent authority to dismiss an appeal if an appellant's brief fails to comply with supreme court rules. *Epstein v. Galuska*, 362 Ill. App. 3d 36, 42 (2005).

¶ 33    Nonetheless, we recognize that striking a brief for failure to comply with supreme court rules is a harsh sanction. *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005). Further, Jorie has made some attempt to comply with the rules, and the partial record and the parties' briefs provide enough information as to the nature of this case and the issues raised on appeal. Therefore, based upon our review, and because this appeal concerns parental rights and the allocation of parental responsibilities, we decline to find forfeiture and will consider this appeal on the merits. See *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 10 (reviewing the merits despite substantial Rule 341 violations). We now turn to Jorie's claims.

¶ 34    On appeal, Jorie raises 14 issues in her brief, but her "argument" section contains only two points. The heading of her first argument comprises over 14 single-spaced lines referring to a panoply of legal phrases, from "untimely notification of hearings" to "indentured servitude" and "cruel and unusual punishment." The heading is essentially unintelligible and provides this court with no direction as to her precise contention of error.

¶ 35    The text of her argument fares no better. First, it lacks any citation to legal authority and the sole citation to the record on appeal (in only her first argument) merely refers to the entirety of the hearing on October 20, 2023. This again constitutes a violation of Rule 341. See Ill. S. Ct. R.

11

341(h)(7) (eff. Oct. 1, 2020) (appellant's argument must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on."). Arguments presented without citation to authority are forfeited. *Universal Casualty Co. v. Lopez*, 376 Ill. App. 3d 459, 465 (2007). On this basis alone, we can affirm the decision of the trial court.

¶ 36    More importantly, Jorie does not challenge whether the trial court erroneously granted the default judgment based upon her failure to appear at either the hearing on August 16, 2023, or the subsequent hearing on her *pro se* motion to vacate. Instead, she asserts that the prove-up hearing on October 20, 2023 was the "culmination of" the court's abuse of discretion, disregard of due process, and various other violations. She makes multiple accusations against Nicolas, his attorneys, and the trial court, none of which are supported by any citation to the record on appeal. As noted, she provides no standard of review nor any legal authority supporting her accusations. A reviewing court is not merely "a repository into which an appellant may 'dump the burden of argument and research,' nor is it the obligation of this court to act as an advocate or seek error in the record." *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009) (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993)). We are unable to discern either the factual or legal grounds supporting her claims, so we must therefore reject her first contention of error.

¶ 37    Jorie's second argument (*i.e.*, that the trial judge presiding over this matter violated the judicial conduct code) is meritless for multiple reasons. Setting aside whether this claim is forfeited based upon Jorie's failure to file a motion for a substitution of judge, Jorie has also completely failed to support these serious allegations with any citation to the record or relevant legal authority. She has failed to develop this argument, warranting its forfeiture. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Sexton v. City of Chicago*, 2012 IL App (1st) 100010, ¶ 79 (failure to develop an argument results in its forfeiture). Moreover, standing alone, the purported examples

(in bullet-point format) that she does list provide no support to her allegation of judicial bias. Jorie's claim on this point is thus meritless.

¶ 38    While this court notes Jorie's apparent wish to develop a parental relationship with her minor child, we also note that the trial court in this case provided a crystal-clear roadmap for her to do so in its orders dated August 16 and October 20, 2023.  Jorie has provided this court with no basis for us to disturb any order that the trial court issued in this matter, and the absence of a complete record on appeal as well as her multiple briefing errors further compel us to reject her claims of error.  Accordingly, we affirm the judgment of the trial court.

¶ 39                              CONCLUSION

¶ 40    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 41    Affirmed.