2026 IL App (1st) 250866-U

SECOND DIVISION
March 31, 2026

No. 1-25-0866

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF AARON HUNTER, | ) | Appeal from the Circuit Court of Cook County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 2021 D 008311 |
| | ) | |
| MIRIAM NOELLE JACKSON, | ) | |
| | ) | Honorable Geri Pinzur Rosenberg, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Van Tine and Justice McBride concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The trial court did not lose jurisdiction to enforce its orders entered prior to the appellant's filing of the notice of appeal.  Appellant failed to include a report of proceedings or acceptable substitute to support her remaining claims of error. Affirmed.

¶ 2   Petitioner Aaron Hunter filed a petition for the dissolution of his marriage with respondent Miriam Noelle Jackson.  The trial court subsequently ordered the appointment of a guardian *ad litem* (GAL) for the parties' two children.  The GAL later filed a petition for rule to show cause seeking an indirect civil contempt of court finding against Miriam for Miriam's alleged failure to pay her share of the GAL's fees.  Following a hearing, the court granted the GAL's petition, found

Miriam in indirect civil contempt of court, and ordered her to be committed to jail until she purged her contempt by paying her share of the GAL's fees. Miriam now appeals *pro se* from the trial court's orders. For the following reasons, we affirm the judgment of the trial court.

¶ 3                                    BACKGROUND

¶ 4      Aaron and Miriam were married in June 2012. On September 27, 2021, Aaron filed his petition for dissolution of marriage. Aaron stated in his petition that the parties have two children, A.H. (9 years old) and S.H. (about 6 years old). This petition remains pending.

¶ 5      On September 28, 2021, Aaron filed an emergency petition to restrict Miriam's parenting time, alleging in part that she was a professional gambler with suspected "substance abuse issues" who was operating an illegal gambling facility out of an apartment with a back bedroom where the children had been dropped off to her. Aaron stated that he was concerned that the bedroom would be used for "adult services or illegal substances," which he argued would be an inappropriate environment for the children. Two days later, Miriam filed a petition for an order of protection against Aaron, alleging in part that he picked up the children from school "unauthorized" and refused to return them. Miriam further alleged that Aaron has had "high and low mental swings" in the past, causing her concern for the children. On November 2, 2021, the trial court entered an agreed order stating in part that (1) Miriam withdrew her petition for an order of protection and (2) the court appointed Erin Masters as guardian *ad litem* (GAL) for the parties' two children. The court then continued the matter to December 3, 2021. The parties then engaged in substantial motion practice, including petitions for an examination, motions to modify the parenting plan, and petitions for rules to show cause, none of which are relevant to the present appeal.

¶ 6      On March 4, 2022, the GAL filed a petition for approval and payment of fees. The petition noted that Aaron had paid the initial retainer of $3,500, and there was a balance of $3,413.68 as of February 28, 2022. On April 26, 2022, the trial court entered a written order directing Aaron to

pay 60% of the guardian *ad litem*'s fees and Miriam to pay the remaining 40%, "without prejudice and subject to reallocation." The order further directed the parties to pay their respective balances owed to the GAL on or before May 9, 2022.

¶ 7    On July 1, 2024, the GAL filed a petition for past-due fees. The GAL stated in her petition that she was owed $9,639.52 as of June 30, 2024, but only Aaron had been making monthly payments for his 60% share of the fee.

¶ 8    On July 19, 2024, the trial court issued an order stating that the matter had come before it for a hearing, with all parties present, and the court being fully advised in the premises. The court ordered both parties to update their financial affidavits and provide supporting financial documents within 14 days, including the prior two years' tax returns, the prior year's bank statements, and their last five paystubs / proof of income (including "tax documents").

¶ 9    On October 22, 2024, the trial court entered a written order (1) granting Aaron's motion to dismiss Miriam's prior emergency petition for an order of protection and (2) directing Miriam to comply with the court's previous order (dated April 26, 2022) to pay her 40% share of the GAL's fees. The order stated that Miriam's share was $9,372 and ordered Miriam to pay $3,124.33 by November 12 and 26, 2024, respectively, and $3,124.34 by December 17, 2024. The court further noted that Miriam had failed to provide a financial affidavit or any financial documents, so the court inferred an "adverse finding" for reallocation.

¶ 10    On November 20, 2024, Miriam filed a combined motion to reconsider the trial court's order dated October 22, 2024, and a motion for leave to file her financial affidavit. The record indicates that the "Notice of Motion" attached to Miriam's motion to reconsider did not provide a specific date and time for a hearing on her motion. Rather, the notice stated in relevant part as follows: "PLEASE TAKE NOTICE that on **the above date and time**, *** Miriam *** will appear *** in courtroom 1902 *** to present the attached [motion to reconsider]." (Emphasis in original.)

¶ 11    On January 7, 2025, the GAL filed a petition for adjudication of indirect civil contempt against Miriam.  The GAL's petition recounted that the trial court appointed her to serve as GAL for the parties' minor children and that, on October 22, 2024, the court ordered that Miriam pay her balance of $9,372 to the GAL in three installments, but that Miriam had not paid anything.  The GAL added that her attempts to reach Miriam via e-mail were unsuccessful.  The GAL then argued that Miriam has the ability to comply with the court's payment order and that Miriam's failure to do so was willful and contemptuous.  The GAL asked the court, *inter alia*, to (1) issue a rule to show cause requiring Miriam to show cause why she should not be held in indirect civil contempt of court for her willful failure and refusal to comply with the court's payment order, (2) hold Miriam in indirect civil contempt of court, and (3) set a purge for the immediate payment by Miriam of the full amount owed to the GAL.

¶ 12    On January 15, 2025, the trial court issued an order finding that the GAL's petition established a *prima facie* case of indirect civil contempt based upon Miriam's failure to comply with the court's prior October 2024 order directing her to pay her share of the GAL's fees.  The court's order, *inter alia*, further granted Miriam 21 days to respond to the GAL's petition.

¶ 13    On January 21, 2025, Miriam filed a verified motion to reconsider the trial court's order dated January 15, 2025.  Miriam noted in this motion that the court "has not recognized" her "pending" motion to reconsider filed "on or about November 22nd."  As with her prior motion to reconsider, the notice of motion attached to this motion also failed to indicate a specific date and time for a hearing on her motion, stating similarly as follows:  "PLEASE TAKE NOTICE that on **the above date and time**, *** Miriam *** will appear *** in courtroom 1902 *** to present the attached [motion to reconsider]."  (Emphasis in original.)[1]

---

[1]  We note that, on March 11, 2025, Miriam filed a verified motion for restoration of her parenting time.  The notice of motion for this filing indicated a hearing date and time:  "PLEASE

4

¶ 14    Following a hearing on May 5, 2025, the trial court issued two orders: (1) an order granting the GAL's petition and finding Miriam in contempt, and (2) a body attachment order against Miriam. With respect to the first order, the court noted that Miriam had been provided proper notice but failed to appear, whereas Aaron, his attorney, and the GAL appeared personally. The order also indicated that the court was fully advised in the premises. The court granted the GAL's petition and found Miriam in indirect civil contempt for failure to pay her share of the GAL's attorney fees. The order added that a separate body attachment with a cash bond would issue. The order further expressed the court's "concerns" regarding the number of "pleadings/motions" that Miriam had filed, noting that there were 15 such filings over the prior 18 months. The court then ordered that Miriam would be "suspended from filing any additional pleadings/motions without leave of court" and that any such filings without leave would be stricken.

¶ 15    The second order (the body attachment order) directed the Cook County sheriff to take Miriam into custody for her "willful and contemptuous" failure to pay the GAL's fees as ordered on October 22, 2024. This order also stated that "the sheriff / law enforcement agent may release [Miriam] after she shall deposit $9,372 cash in escrow with the sheriff or the court."

¶ 16    The next day, the trial court entered an "order of adjudication of indirect civil contempt and/or order of commitment." The order stated that (1) the GAL appeared, but Miriam did not; (2) the court had heard both "the testimony of the parties and witnesses" as well as the arguments of counsel; and (3) it was fully advised in the premises. The court recounted that, the prior day, it had found Miriam in indirect civil contempt of court for her failure to pay fees to the GAL. The order memorialized the court's finding of Miriam in indirect civil contempt of court and ordered her committed to the Cook County jail and to remain there until she "shall have purged *** herself

---

TAKE NOTICE that on **March 14, 2025 at 10 a.m.**, *** Miriam *** will appear *** in courtroom 1902 *** to present the attached [motion]." (Emphasis in original.)

of contempt" by paying the GAL $9,372 "cash/cash bond." Finally, the order continued the cause for "[s]tatus to confirm purge payment" to June 23, 2025.

¶ 17 On June 23, 2025, the trial court held a hearing at which it addressed the status of Miriam's appeal and the body attachment order that the court had previously entered. Aaron's counsel informed the court that, regarding Miriam's appeal, Miriam was appealing *pro se* and had missed certain appellate deadlines, including filing the report of proceedings. Aaron's counsel further indicated that Miriam failed to file a motion in the appellate court to stay enforcement of the body attachment. Miriam's counsel argued that enforcement of the body attachment should be stayed while the appeal remained pending. Aaron's counsel argued that, absent a stay entered by the appellate court, the trial court lacked authority to suspend enforcement of the order.

¶ 18 The trial court then reviewed various documents presented to it, including correspondence from the appellate court. The court found that no motion to stay enforcement of the body attachment had been filed or granted, and it concluded that the body attachment order was self-executing, so the court was required to allow the sheriff to execute the order.

¶ 19 The trial court reiterated that Miriam could purge the contempt order and body attachment by posting the amount in the contempt and attachment orders ($9,372). The court added that, if she posted the amount that day, she should be released. The court then continued the matter for a status on the purge payment to June 30, 2025.

¶ 20 On June 30, 2025, the trial court held a status hearing. Counsel for Aaron, counsel for Miriam, and the GAL appeared in person, while Miriam appeared via Zoom. At the outset, the parties confirmed that respondent had satisfied the purge amount associated with the previously entered body-attachment order. Although the GAL requested an order for turnover of the purge funds, counsel for Miriam objected on the basis that Miriam's *pro se* appeal was still pending concerning the orders from which the purge amount arose. Counsel for Miriam added that a

motion to vacate "the very order for the dollar amount for the judgment" had been filed on November 20, 2024, but it had not been heard. The trial court then asked what happened to that motion, recalling a "local rule that says if you don't file a motion for hearing within a certain period of time, then it would not be heard." Counsel for Aaron responded that the docket had previously been reviewed with the court and that "a list of all the pending pleadings that had not been heard, had not been called for a hearing within the 90-day period" were deemed abandoned. The court determined that, since Miriam had satisfied the purge amount but an appeal concerning the underlying orders remained pending, the funds should remain with the circuit clerk pending resolution of the appeal. The court further clarified that the pending appeal did not stay unrelated issues in the case, such as parenting and financial matters. Finally, the court ordered that the contempt rule be discharged in light of the satisfaction of the purge amount.

¶ 21    Miriam timely filed her *pro se* notice of appeal from the two orders dated May 5, 2025, and the order dated May 6, 2025. This appeal follows.

¶ 22                                     ANALYSIS

¶ 23    Aaron has not filed an appearance in this court, nor has he filed a brief. Nonetheless, we elect to consider this case on the record and Miriam's brief only. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (reviewing courts may address the merits of a case on one party's brief only "if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief").

¶ 24    Miriam's *pro se* appellant's brief includes the following five issues for review: (1) whether, after she filed her notice of appeal, the trial court lost jurisdiction to allow the previously entered body attachment order to be executed; (2) whether her due process rights were violated because the court purportedly failed to inquire into her ability to pay her share of the GAL fees (for which she was taken into custody for indirect civil contempt of court); (3) whether the

7

court abused its discretion by refusing to hear certain of her motions to reconsider prior orders; (4) whether reversal and vacatur is warranted based upon the court's "admission" that Miriam filed an appeal and its enforcement of the body attachment; and (5) whether she is entitled to various forms of "relief." She has presented these 5 issues, however, in 10 non-numbered arguments in her brief. These arguments do not correspond sequentially to the issues she raises. Nonetheless, we will examine the issues she raises and note which arguments seem to correspond to them.

¶ 25 We must also discuss the state of the record on appeal. Illinois Supreme Court Rules 321 and 324 require an appellant to provide a complete record on appeal, including a certified copy of the report of proceedings. See Ill. S. Ct. Rs. 321 (eff. Oct. 1, 2021) and 324 (eff. July 1, 2017). If a verbatim transcript is unavailable, the appellant may file an acceptable substitute, such as a bystander's report or an agreed statement of facts, as provided for in Rule 323. See Ill. S. Ct. R. 323 (eff. July 1, 2017).

¶ 26 Supreme court rules are not mere suggestions; they are rules that must be followed. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. Moreover, it is a deep-rooted principle that a litigant appearing in this court *pro se* must follow the same rules as a litigant represented by counsel. *In re Marriage of Winters*, 160 Ill. App. 3d 277, 281 (1987) (citing *Biggs v. Spader*, 411 Ill. 42 (1951)). The burden of providing a sufficient record on appeal rests with the appellant (here, Miriam). *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005); *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of such a record, we presume the trial court acted in conformity with the law and with a sufficient factual basis for its findings. *Foutch*, 99 Ill. 2d at 392. Furthermore, any doubts arising from an incomplete record will be resolved against the appellant. *Id.* This is particularly true "when the judgment order states that the court is fully advised in the premises." *Dell'Armi Builders, Inc. v. Johnston*, 172 Ill. App. 3d 144, 149 (1988). With these limitations in mind, we now turn to the issues Miriam raises in this appeal.

¶ 27    In this case, there is no transcript (or acceptable substitute) for the hearing on May 5, which resulted in the May 5 and 6, 2025 orders.  Those orders are the only ones that Miriam listed in her notice of appeal, and they are the orders underlying her second issue (concerning the trial court's alleged failure to consider Miriam's ability to pay her allocated share of the GAL's fees prior to having her placed into custody).  The body attachment (that the trial court issued on May 5, 2025), the granting of the GAL's petition for a rule to show cause against Miriam (also issued on May 5, 2025), and the order finding Miriam in indirect civil contempt of court (issued on May 6, 2025) all indicated that the court was "fully advised in the premises."

¶ 28    In addition, the order from May 6, 2025, which memorialized the orders from the previous day (*i.e.*, finding Miriam in indirect civil contempt of court and ordering her commitment to jail), further stated that there was a hearing at which testimony and arguments were heard.  Since Miriam has failed to provide this court with a sufficient record on appeal, we must presume the court acted in conformity with the law and with a sufficient factual basis for its findings and resolve any doubts arising from this incomplete record against the appellant (*i.e.*, Miriam).  See *Foutch*, 99 Ill. 2d at 392.  We are therefore compelled to reject her claim of error and affirm the trial court on this ground alone.  See, *e.g.*, *In re Marriage of Grauer*, 153 Ill. App. 3d 125, 130 (1987) ("This court cannot and will not decide in favor of Respondent[-Appellant] on the alleged abuse of discretion in the absence of his showing in the record facts that would support such a conclusion.").

¶ 29    In her first and fourth issues (the first and fifth arguments in her brief), Miriam challenges the trial court's "enforcement" of the body attachment order that was entered before she filed her notice of appeal.  She argues that the court was divested of jurisdiction when she filed her notice of appeal and concludes that the court was "thereafter without authority to modify, enforce, or expand the orders under review, except for collateral or ministerial matters."  We disagree.

9

¶ 30    An appellate court's jurisdiction immediately attaches upon the filing of a notice of appeal, the result of which divests the trial court of jurisdiction to enter "any orders of substance which would modify the judgment or its scope." *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 173 (2011); *In re Marriage of Harnack & Fanady*, 2022 IL App (1st) 210143, ¶¶ 42-44.  It should be noted, however, that trial courts nevertheless "retain authority to compel compliance with their orders through contempt proceedings." *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 157 Ill. 2d 282, 290 (1993).  If, for example, a petition for rule to show cause merely seeks enforcement of the trial court's order, the trial court retains jurisdiction to entertain and adjudicate that petition.  See *Harnack & Fanady*, 2022 IL App (1st) 210143, ¶ 42.

¶ 31    Although a party can apply for a stay of enforcement of the trial court's order while the order is on appeal, a notice of appeal "does not in itself operate as a stay of enforcement of the [trial] court's orders." See *Williamsburg Village Owners' Ass'n v. Lauder Associates*, 200 Ill. App. 3d 474, 481-82 (1990) (until a stay was granted, "the trial court was not precluded from exercising its authority to execute its contempt order").

¶ 32    Here, Miriam's jurisdictional argument regarding the body attachment order similarly fails. The attachment order was entered in response to the GAL's petition for rule to show cause why Miriam should not be held in contempt for her failure to pay her share of the GAL's fees and was entered—*before* Miriam filed her notice of appeal—essentially to allow enforcement of the trial court's prior contempt order and the sanctions imposed therein.  In addition, Miriam never sought a stay pending appeal in either the trial court or this court.  Hence, there was no impediment to the trial court allowing the enforcement of the body attachment order.   Since the trial court retained unimpeded jurisdiction in this matter to enforce its order, we must reject Miriam's contention that the court lacked jurisdiction to allow the execution of and enforce the prior body attachment order. Miriam's first and fourth claims of error are therefore without merit.

¶ 33    Miriam's second issue (the second, fourth, and seventh arguments in her brief) concern the trial court's purported failure to hold a hearing on her ability to pay the GAL fees prior to holding her in contempt for her nonpayment. This issue fails for multiple reasons. First, as noted above, Miriam has failed to provide this court with a transcript (or acceptable substitute) of the contempt hearing or the original hearing at which the court allocated the GAL's fees. As such, we must (1) presume the trial court acted in conformity with the law and with a sufficient factual basis for its findings and (2) resolve any doubts arising from an incomplete record against Miriam, the appellant. See *Foutch*, 99 Ill. 2d at 392. In addition, Miriam's fourth and seventh arguments comprise two and four sentences, respectively, but she provides no citation to either the record or pertinent authority, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) (stating that the appellant's argument "shall contain the contentions of the appellant *** with citation of the authorities and the pages of the record relied on). A reviewing court is not merely "a repository into which an appellant may 'dump the burden of argument and research,' nor is it the obligation of this court to act as an advocate or seek error in the record." *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009) (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993)). These two undeveloped sub-arguments are thus rejected on this additional ground.

¶ 34    Miriam's third issue (comprising her third argument) also fails. Her third argument alleges that the trial court abused its discretion and violated her due process rights by refusing to hear her motions to reconsider "before issuing contempt and incarceration." To the contrary, the party filing a motion in the circuit court has the burden of "calling for hearing" that motion within 90 days of its filing. Cook County Cir. Ct. R. 2.3 (July 1, 1976). The notice for Miriam's motions to reconsider did not provide any such hearing date within 90 days of the filing. Therefore, it was never presented to the trial court and was properly deemed abandoned.

¶ 35    Miriam's fifth issue has the heading "Relief" and appears to present the question of whether she is entitled to reversal and vacatur of the May 5th and 6th orders, restitution of the $9,372 that she has apparently paid, and remand with instructions to the trial court to protect her constitutional and parental rights. This issue relates to her ninth and tenth arguments. These arguments also have no citation to the record or legal authority whatsoever (again in violation of Rule 341(h)(7)), and they do not present a coherent appellate issue for us to decide. As a result, this issue and the corresponding arguments are forfeited, and we will not consider them.

¶ 36    Finally, Miriam's sixth and eighth arguments in her brief do not seem to correspond to any of her five issues listed in her brief. They are entitled "Medical Emergency In Custody" and "Interference With Parenting Rights," and they consist of two or three vague sentences without any citation to the record or legal authority, once again in violation of Rule 341(h)(7). These arguments are doomed for the same reason as her arguments in her fifth issue above. Therefore, they are forfeited, and Miriam's claims on appeal are without merit.

¶ 37    In sum, Miriam has provided this court with no basis for us to disturb any order that the trial court issued, and the absence of a complete record on appeal as well as her briefing errors compel us to reject her claims. Accordingly, we affirm the judgment of the trial court.

¶ 38                                    CONCLUSION

¶ 39    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 40    Affirmed.